### C. G. ELLIS v. ELLA C. RANDLE ET AL.

Decided November 1, 1900.

**1. Note Payable in Other Notes—Tender—Charge.**

In an action on a note as to which the payee had agreed that when it should become due he would take in payment other notes, if acceptable to him, and in which action it was pleaded that other sufficient notes had been tendered in payment, it was not error for the court to refuse to charge that if the payee stated in a certain conversation, at a time when the maker (defendant) did not have such notes and did not tender them, that such notes were acceptable to him, and that he would do all in his power to get the note (it being then deposited in a bank as collateral) and deliver it up, the verdict should be for defendant.

**2. Same.**

Nor was it error for the court to refuse to charge that it was the duty of the payee to keep the note so far under his control as to be able to deliver it when satisfactory notes were tendered in payment, and if notes satisfactory to the payee were tendered the verdict should be for defendant, where the court had already charged that the jury should find for defendant if notes satisfactory to the payee were tendered, but he declined to deliver the note sued on because it was beyond his control.

**3. Evidence—Letters.**

Where plaintiff required defendant to produce certain letters, and then, upon their production, declined to offer them in evidence, and the facts therein recited are shown by other uncontradicted evidence, the mere inspection of the letters by plaintiff did not make them admissible on behalf of defendant.

**4. Same—Letters as Res Gestae—Tender.**

Where defendant sought to prove a tender of certain notes, made through his agent, letters written by him to the agent inclosing the notes with statements as to the solvency of the makers, were not part of the res gestae.

**5. Practice—Court Limiting Evidence—Harmless Error.**

Where the only effect of certain evidence, had it been admitted without restriction, would have been to defeat plaintiff's claim of innocent purchaser, and the court's charge decided this issue against plaintiff and in appellant's favor, the action of the court in limiting the purpose for which the jury should consider such evidence was harmless error.

**6. Note Payable in Other Satisfactory Notes—Tender.**

Plaintiff's decedent was the indorsee of the note sued on, and was bound by an agreement of the payee with the maker that it might be paid in other notes acceptable to the payee. The maker tendered notes of a foreign corporation whose solvency was not clearly established, secured by property at a distance, some of the notes not maturing for several years. Held, that an expression by the payee of his willingness to accept the notes tendered, if the indorsee would take them, did not show the notes were acceptable to him so as to make the tender a bar to recovery on the note in suit.

APPEAL from Dallas. Tried below before Hon. W. J. J. SMITH.

*Eugene Williams*, for appellant.

*A. I. Hudson* and *Lewis Wood*, for appellee.

TEMPLETON, ASSOCIATE JUSTICE.—In March, 1897, C. H. Alexander, who is one of the appellees, bought from the estate of L. A. Ellis a lot of sugar-house machinery situated in Louisiana. It seems that one I. G. Randle was interested in the purchase, and that he and Alexander owned the property in equal shares, but it was held in Alexander's name. On April 22, 1897, Alexander conveyed the machinery to the appellant, C. G. Ellis, by a bill of sale which recited a consideration of $25,000, paid and to be paid. Randle agreed to the sale. He was to receive $12,500 for his interest in the property. Nothing was paid by Ellis, and soon a misunderstanding arose between Ellis and Alexander about the terms of the sale. Ellis claimed that he was simply employed to sell the machinery, and that he took the title in his own name for convenience in making the sale, and that he was to receive for his services one-half of whatever sum was realized on the sale in excess of $25,000. Alexander contended that it was a bona fide sale of the property for $25,000, and that Ellis owed him that amount, and demanded payment. Randle was insisting on the payment of the $12,500 which he claimed was due him on the transaction, and on June 10, 1897, Ellis executed and delivered to Alexander his note for that amount, due one year after date. Alexander indorsed the note and turned it over to Randle. Ellis contends, and so testified, that the note was executed as accommodation paper only, and for the purpose of enabling Alexander to satisfy Randle, and that Alexander was to retain the note in his possession and not use it for any other purpose. On October 19, 1897, Randle deposited the note with a Dallas bank as collateral to secure a debt of $50,-000 owing by him and Alexander. There was other security for said debt, some of it covering property owned by Alexander.

On December 23, 1897, Ellis and Alexander entered into an agreement which reads as follows: "Know all men that we, C. H. Alexander

and C. G. Ellis, make the following contract: 1. I, C. H. Alexander, by these presents sell and convey to said C. G. Ellis all and singular the sugar machinery located in the sugar-house on what is known as the Southwood plantation, in Ascension Parish, in the State of Louisiana, being the identical machinery heretofore deeded by the heirs of L. A. Ellis, deceased, to C. H. Alexander, to have and hold as his own property, in consideration of his promise to me hereinafter set forth.

"2. I, C. G. Ellis, by these presents contract and agree to pay unto C. H. Alexander for said machinery $27,500, as follows: $7500 in bonds of the Cavanal Coal and Railway Company, and $7500 in the stock of said company, the receipt of which bonds and stock is hereby acknowledged; and $12,500 in the assumption by me of the payment of a certain promissory note executed by the said C. H. Alexander for that sum, of date ———, and by him indorsed to I. G. Randle, who is now owner and holder thereof, in manner and form as follows, to wit: I bind myself and hereby agree to sell said machinery to the best possible advantage, and warrant that the same shall bring a sufficient sum to pay and discharge said sum of $12,500 called for in said note, and interest thereon according to its terms from this date, and out of the proceeds derived therefrom I agree to pay said note and interest, and in case I fail to sell said machinery for sufficient cash to pay and discharge said note last aforesaid, I hereby agree to pay unto said C. H. Alexander the said sum of $12,500, with interest as specified in said note from this date, either in cash or in promissory notes which will be acceptable to him, and I further agree that should I receive more than $27,500 for said machinery, one-half of such excess over that sum shall be paid to C. H. Alexander and shall be his property."

On January 15, 1898, Ellis sold $2000 worth of said machinery and a lot of other machinery to the Lone Star Sugar Company, and took four notes of the company in payment therefor. The notes were for $3285.94 each, and were due in one, two, three, and four years, respectively, and were secured by a lien on the property sold. When the note for $12,500 fell due, Ellis tendered the sugar company notes in satisfaction thereof. Alexander refused to accept them, and Ellis declined to pay the note in cash. Afterwards Ellis disposed of most of the machinery bought by him from Alexander and applied the proceeds to his own use. Randle having died, the appellee, Mrs. Ella C. Randle, who was his widow and sole heir, brought suit on the note for $12,500 against Ellis, as maker, and Alexander, as indorser. Alexander admitted liability, and there was judgment against him. Ellis pleaded, among other defenses, his tender of the sugar company notes to Alexander, and again tendered them. It seems that the notes are lost, and they were not produced in court. There was a trial by jury, and Mrs. Randle recovered judgment against Ellis for the amount of the note sued on; hence this appeal.

On the trial the court charged the jury to find for Mrs. Randle if they believed that the sugar company notes tendered by Ellis to Alexander in

satisfaction of the note sued on were not acceptable to Alexander; otherwise to find for Ellis. No other issue was submitted to the jury.

The appellant requested a special charge, which was refused, to the effect that if, when Alexander was in Houston, the sugar company notes were acceptable to him, and if he said to Ellis that he would do all he could to get the $12,500 note in his possession and deliver it to Ellis in exchange for the sugar company notes, then the jury should find for appellant. We think that the charge is subject to the criticism that it attaches too great weight and gives undue prominence to Alexander's statement made to Ellis at Houston. It will be remembered that the question as to whether the notes tendered were acceptable to Alexander was directly and pertinently submitted in the main charge, and the charge asked, so far as it correctly presented the law on that proposition, was therefore unnecessary. The transaction at Houston, referred to in the requested charge, occurred several months after the note sued on became due, and Ellis did not then have the sugar company notes, and did not then tender them to Alexander. Under the circumstances shown, we think that the court did not err in refusing to give the requested charge.

The appellant asked the court to charge the jury that it was Randle's duty to keep the note sued on so far under his control as to be able to deliver it to Ellis at its maturity in case Ellis then tendered in satisfaction thereof notes acceptable to Alexander, and that if he did not do so, and that if Ellis, when the note fell due, tendered to Alexander in payment of the note sued on, notes that were acceptable to Alexander, if acceptable to Randle, then the jury should find for appellant. The court refused to give this charge, but did give another charge requested by the appellant to the effect that if, at the time the sugar company notes were tendered to Alexander, they were acceptable to him, but that he refused to deliver up the note for $12,500 because it was in bank and beyond his control, and not because the notes tendered were not satisfactory to him, then the jury should find for appellant. We are of the opinion that the charge given presented the issue as favorably to appellant as he could demand. By the charge given the jury was instructed, in effect, that the fact that the note sued on was beyond the control of Alexander because it had been deposited in the bank by Randle, would not justify Alexander in refusing to deliver the note to Ellis, if the notes tendered were otherwise acceptable to Alexander. The sole issue to be decided by the jury was, were the notes tendered acceptable to Alexander? If they were not, then Mrs. Randle was entitled to recover; if they were, then the verdict should have been for the appellant. The main charge and the special charge given at the request of the appellant presented every phase of this issue, and the special charges asked and refused, even in so far as they were correct, were unnecessary. The contract between the parties was that the notes tendered should be acceptable to Alexander. We think the fact that Alexander was willing to accept the notes if he could get Randle to take them and surrender the note sued on,

would not, as a matter of law, make the notes tendered acceptable to Alexander. There was no error in refusing to give the requested charge.

The appellees, on the trial, demanded of the appellant that he produce all the letters concerning the sugar company notes, written by him to his brother, E. A. Ellis, who was appellant's agent at Dallas, and who made the tender for appellant to Alexander of the said notes. The appellant produced the letters, and there were among them two letters of date May 30, 1898, and May 31, 1898, which the appellees examined but did not offer in evidence. The letters stated that he, Ellis, inclosed the sugar company notes, to be tendered to Alexander, together with a lot of references as to the solvency of the makers thereof, and directed E. A. Ellis to tender the notes to Alexander and get the note sued on. The letters further stated that the notes tendered were good, and that Alexander, under his contract with Ellis, was bound to accept them, and that he, Alexander, had agreed not to let the note sued on go out of his possession. The appellant offered the letters in evidence, but they were excluded on objection of appellees. We think there was no error in this ruling. The appellant and E. A. Ellis both testified fully as to all the matters referred to in the letters, and their testimony on these points was uncontroverted, but was not conclusive as to the commercial value of the notes tendered. The appellees admitted in open court, on the trial, that E. A. Ellis was agent for the appellant and had authority to make the tender. The date that E. A. Ellis received the notes from appellant appears to be immaterial, but, even if it was material, E. A. Ellis testified as to the date, and he was not contradicted. We do not think that the letters were part of the res gestae. They were written long after the contract was made, and the statements made by the appellant therein concerning the terms of the contract and the solvency of the makers of the sugar company notes were hearsay and self-serving.

It is insisted that the inspection of the letters by the appellees made them admissible when offered by the appellant, and the contention appears to be supported by the English rule on this subject. 1 Greenl. on Ev., sec. 563. This rule has been followed in some of the American States and rejected in others. The only case in Texas on this question, to which our attention has been directed, is the case of Saunders v. Duval, 19 Texas, 467. In that case, the court states the English rule, but does not, in terms, approve it, and it was not necessary to a decision of the case to approve or reject it. We regard the question, therefore, as an open one in this State, and are inclined to the opinion that sound reason and the weight of authority is against the English rule. 1 Rice on Ev., sec. 163; 1 Jones on Ev., 227; Austin v. Thompson, 45 N. H., 113; Withers v. Gillespie, 7 Serg. & R., 10; Smith v. Renz, 131 N. Y., 169; Kenney v. Clarkson, 1 Johns., 385.

If the English rule should be adopted, it would be extremely perilous for a party demanding the production of papers to inspect them when produced. We think that the trial court, in the exercise of a sound discretion, could prevent the privilege of inspection from being abused. Unless the party demanding the production of the papers has, by an in-

spection of them, acquired knowledge of the facts to which he is not in good conscience entitled, no injury or reasonable ground of complaint is shown. No injury to appellant appears to have resulted from the inspection of the letters in question by the appellees, and we think there was no error in refusing to permit their introduction when offered by appellant. As before observed, the appellant and E. A. Ellis testified fully about all the matters referred to in the letters, and their testimony was not contradicted; and even if the letters had been permitted to go to the jury, they would have thown little if any light on the sole issue submitted, viz., whether the notes tendered were acceptable to Alexander. The testimony of appellant and E. A. Ellis being uncontroverted, it was not necessary to corroborate them. So, in any event, we are of the opinion that there was no error in the ruling complained of.

The appellant testified to a number of conversations between himself and Alexander, and the court, at the instance of Mrs. Randle, orally instructed the jury, at the time said testimony was introduced, that they could not consider the same as against her unless, when the evidence was closed, they believed that Alexander and Randle were partners, or that Alexander was Randle's agent in the transaction. Such partnership and agency had been pleaded by the appellant, and had been properly denied by the appellees, and Mrs. Randle had pleaded that she was an innocent holder of the note sued on. It was doubtless in view of the issues raised by these pleadings that the court gave the instructions limiting the evidence. The only effect of the evidence, even if admitted against Mrs. Randle without restriction, would have been to defeat her claim of innocent purchaser, and the court, in charging the jury, decided this issue against her and in appellant's favor. The court, in the charge given, ignored her claim to be an innocent holder of the note sued on, and instructed the jury to find for appellant against her if they believed that the notes tendered were acceptable to Alexander. Besides, none of the conversations, except the one at Houston long after the note sued on became due, related to the question as to whether the notes tendered were acceptable to Alexander. In this state of the case, we think it is clear that appellant has no reason to complain, and that the assignment is not well taken.

The appellant insists that the evidence is not sufficient to sustain the verdict. We have seen that the only issue of fact was whether the notes tendered were acceptable to Alexander. Appellant's evidence, which was uncontradicted, was to the effect that Alexander expressed a willingness to acept the notes if Randle would agree to take them in lieu of the note sued on. Of course, Alexander was willing to accept the notes, regardless of the amount or value thereof, provided Randle would receive them and surrender the note he held. But we do not think that the fact bound him to accept them if they were for any other reason not acceptable. And it seems that they were not, necessarily, desirable paper. The sugar company was not a Texas corporation, and had no permit to do business in this State. The solvency of the company was not clearly established. The success of its business does not seem to have been as-

sured. The property sold to the company by Ellis, and which was covered by a lien to secure its notes to Ellis, was situated in Brazoria County, a somewhat inconvenient distance from Dallas, where Alexander and Randle lived, and the notes were not payable at Dallas. The time of payment of the notes might well have made them less desirable than notes maturing sooner. In view of all these facts we can not say that Alexander's refusal to accept the notes was arbitrary. It is true that he did not urge these reasons for refusing to accept them, but he was not bound to do so. Before Ellis could enforce acceptance, he was obliged to tender notes to which no reasonable objection could be urged. Even if Randle was bound to take notes that were acceptable to Alexander, he was not bound by the unaccepted tender of notes, not in all respects reasonably satisfactory, simply because Alexander was willing to accept them if Randle would surrender his note. We can not say that the appellant has proved a tender of notes that were acceptable to Alexander, within the meaning of the contract, and conclude that the evidence was sufficient to warrant the verdict. The judgment is affirmed.

*Affirmed.*

Writ of error refused.