**J. R. MILAM CO. et al. v. FIRST NAT. BANK IN GLEN ROSE et al.**

No. 872.

Court of Civil Appeals of Texas. Waco.

April 24, 1930.

Rehearing Denied June 19, 1930.

Spell, Naman & Penland, of Waco, for appellants.

E. A. Rice, of Cleburne, for appellees.

STANFORD, J.

This suit was brought by the First National Bank in Glen Rose against J. R. Milam Company, a corporation, C. A. Milam, C. A. Wirt, and Geo. P. Snyder. Plaintiff alleged it was organized as a national bank on January 24, 1928; that prior to said date the First National Bank of Glen Rose was a national banking corporation; that defendant, C. A. Milam, was then and at all times theretofore the president of said bank and was in active control and management of same, and that said defendant, C. A. Milam, was likewise president of, and was in active control and management of the said J. R. Milam Company, a private corporation, and that both said bank and said J. R. Milam Company had their places of business in Glen Rose, Tex.; that on April 19, 1911, the Exchange National Bank of North Fort Worth, Tex., conveyed to defendant C. A. Wirt a tract of land in Somerville county of 355¼ acres, and in payment therefor the said C. A. Wirt executed

his ten notes for $367.50 each; that said First National Bank of Glen Rose afterwards acquired said notes and the liens securing same; that said notes were renewed from time to time until said indebtedness on about July 15, 1925, amounted to $7,115, at which time C. A. Wirt and wife deeded, or intended to deed, said land to the First National Bank of Glen Rose in full settlement of said note, but by reason of the acts of the agents of J. R. Milam Company, said company was named as grantee in said deed; that on January 24, 1928, the First National Bank of Glen Rose, being insolvent, was taken over by plaintiff herein, the First National Bank in Glen Rose, including all its assets, etc.

The J. R. Milam Company alleged that the deed from Wirt and wife to it of July 15, 1925, was made to satisfy a note it held against Wirt for $6,585. The record shows that very soon after the J. R. Milam Company acquired said deed, said company placed a mortgage of $10,000 on said land with defendant Geo. P. Snyder, who was made a party to this suit.

The relief sought by plaintiff bank was to reform the deed of July 15, 1925, and to recover said land, or in the alternative, to recover on its $7,115 note against Wirt and to foreclose its vendor's and deed of trust liens on the land. In the interest of brevity, we will not set out the pleadings more fully, but will say the pleadings are sufficient to raise all the issues made by the evidence.

In response to special issues the jury found:

(1) That the First National Bank of Glen Rose did acquire the land lien indebtedness represented by the $367.50 note introduced in evidence by plaintiff.

(2) That the land lien indebtedness represented in the land note of $277.50, due December 1, 1917, was acquired by the First National Bank of Glen Rose.

(3) That the land lien indebtedness represented in the $277.50 land note due December 1, 1918, was acquired by said bank.

(4) That C. A. Wirt and wife conveyed the 355¼ acres of land by their deed of date July 15, 1925, for the purpose of satisfying the $7,115 note held by the bank.

(5) That the $7,115 note, dated September 23, 1924, introduced in evidence by plaintiff, represented money used in the purchase of the vendor's lien indebtedness against the 355¼ acres of land.

(6) That the reasonable annual rental value of the 355¼ acres of land from and since July 15, 1925, is the sum of $200 per annum.

(7) That at the time of the execution of the deed by C. A. Wirt and wife on July 15, 1925, J. C. Montgomery represented to C. A. Wirt that the execution of said deed would be in satisfaction of the Wirts' indebtedness to the First National Bank of Glen Rose.

(8) That the said defendant C. A. Wirt was induced by such representation to execute said deed of July 15, 1925.

The defendant C. A. Milam having been dismissed from the suit, the court entered judgment upon the above findings of the jury for the title and possession of said land, and judgment for $600 against the defendant J. R. Milam Company as the rental value for the use of the premises for three years. J. R. Milam Company alone has appealed, and presents the record here for review.

Under its third, fourth, and fifth propositions, appellant contends that the findings of the jury to the first, second, and third special issues, to the effect that the bank acquired one of said vendor's lien notes for $367.50 and two for $277.50 each, were unsupported by any evidence. Under its thirteenth proposition appellant contends the finding of the jury to the effect that the $7,115 note held by the bank represented money used in the purchase of said vendor's lien indebtedness against the land involved, was wholly unsupported by any evidence. As all these propositions challenge the sufficiency of the evidence to support the findings of the jury, we will dispose of all of them together.

The record shows that C. A. Milam became president of the First National Bank of Glen Rose in 1907 or 1908, and that he continued as president, having the active control and management of said bank, up to January 24, 1928, when it was taken over by the First National Bank in Glen Rose. About the same time C. A. Milam became president of the First National Bank of Glen Rose in 1907, he also became president and general manager of J. R. Milam Company, a mercantile corporation, and has continued as president and general manager of said latter corporation to the present time. In 1911, C. A. Wirt, a customer of the bank, which was the only bank in Glen Rose, bought the 355¼ acres of land in controversy from a bank in Fort Worth, and in payment therefor executed ten notes for $367.50 each, one maturing each year. As these notes matured they were sent to the bank in Glen Rose for collection, and the evidence was sufficient to show that the bank took up some of said notes for C. A. Wirt, and carried same for him. One of this series of notes, dated April 19, 1911, and due December 1, 1914, for $367.50, was found in the possession of the bank and by it introduced in evidence. A part of the first series of notes for $367.50 each were extended by the Fort Worth bank by renewal agreement, and ten new notes for $277.75 each given in lieu thereof. Two of these renewal notes, dated December 1, 1916, and due December 1, 1917 and 1918, respectively, for $277.75 each, were in possession of plaintiff bank and put in evidence by it. The evidence also shows that on February 6, 1919, C. A. Milam, acting for both the First National Bank of Glen Rose and

J. R. Milam Company, took a deed of trust from C. A. Wirth and wife on the 355¼ acres of land in controversy to secure the payment of two notes due said bank, one for $3,750 and another for $1,174, both executed by C. A. Wirt, and also two notes, one for $1,270 and another for $929.90, executed by Wirt to J. R. Milam Company. With respect to this indebtedness of C. A. Wirt to the bank for the total of $4,924.50, secured by said deed of trust, C. A. Milam testified as follows:

"Of course, as president of J. R. Milam Company, and as president of the First National Bank of Glen Rose, I got this deed of trust executed. I never did have Mr. Wirt renew that deed of trust to any trustee in favor of the bank. * * * This renewal agreement from Mr. Wirt and wife, dated February 1st, 1924, I had that prepared. It is to J. R. Milam Company. * * * When I took this renewal agreement I dropped the bank out and put J. R. Milam Company in for the whole lien. The reason I did that was because we took up this $1,622.00 which was a superior lien and which wiped out the bank's lien. The bank didn't want to put any more money into the land at that time. I was the bank."

C. A. Milam testified further: "Of course, as president of the bank, I knew that the bank held one of those original $367.50 notes of the first series, and as president of the bank I also knew that the bank held notes Nos. 1 and 2 of the second series for $277.75 each. I knew that up to December 19th, 1917, this transaction (carrying C. A. Wirt's vendor's lien notes) was being handled through the bank by Mr. Wirt and Mr. Lybick or the Exchange State Bank of Fort Worth."

The entries in the books of the bank with reference to the $1,173.05 note and the $3,750 note, aggregating the $4,924.05 held by the bank against Wirt and secured by the deed of trust by Wirt and wife of date February 6, 1919, are clearly shown. The witness C. A. Bridges in his testimony traced these two items—same being renewed from time to time until December 30, 1924, when the aggregate became and was $7,115 due on that date. Mr. Bridges testified that the body of this note, which is written in ink, is in the handwriting of C. A. Milam, president of the bank. There is no contention that this $7,115 note, or any of the items making the aggregate of said note, were ever paid. The books of the First National Bank of Glen Rose show that a part of the $7,115 note was charged off the books of the bank on December 31, 1925, and the remainder of it in April, 1926. The directors present when said note was charged off were C. A. Milam, Geo. P. Snyder, and C. A. Milam, Jr. There were other directors, but they were not present when said note was charged off the books.

C. A. Wirt testified, in effect, that he did owe the bank the note for $7,115, dated September 23, 1924, but that he never at any time owed J. R. Milam Company more than $1,100 or $1,200; that when he and his wife made the deed conveying the 355¼ acres of land, that they made said deed for the purpose and intention of thereby satisfying his indebtedness to the bank; that he did not read all of said deed, and thought at the time he signed said deed that it was made to the bank; that J. L. Montgomery, an employee of J. R. Milam Company, was by said company sent out to his place to get said deed; that said deed was already written, and that before he signed it, the said Montgomery told him the deed was to satisfy his indebtedness at the First National Bank of Glen Rose, and that he relied upon said statement of Montgomery; that after said deed was made he renewed his indebtedness to J. R. Milam Company twice, but was never thereafter called upon to pay or renew said $7,115 note to the bank.

There is circumstantial evidence to the effect that the $7,115 note represented money used in the purchase of the vendor's lien indebtedness against the 355¼ acres of land, and some opinion evidence on the part of C. A. Wirt to the same effect. On the other hand, we have eight of said second series of said notes for $277.75 each, which were in the possession of J. R. Milam Company, duly indorsed to said company and duly transferred of record to said company, and by it put in evidence. We have also the evidence of the witness Montgomery, to the effect that he closed the purchase of said notes by J. R. Milam Company from the Fort Worth bank, and that the payment for same was made with money belonging to J. R. Milam Company. In this condition of the record, we do not think the evidence is sufficient to support the finding of the jury to the fifth special issue, and that the case should be reversed and sent back for another trial, and it may be upon another trial other evidence can be procured. If upon another trial it should be shown that both the bank and J. R. Milam Company furnished money to take up vendor's lien indebtedness against said land, then each of said parties on an equal parity should be subrogated to said lien for the amount so furnished, and the bank and Milam Company on an equal basis have the benefit of the mortgage lien in the remainder, if any. Under the circumstances in this case, we do not think the bank's mortgage lien should be held in any way lost or impaired, or the rights of Milam Company in any way increased over the rights of the bank, by reason of the failure of C. A. Milam to renew said mortgage.

Appellant's third, fourth, and fifth propositions are overruled. The witness C. A. Milam admitted that the Glen Rose bank owned and

held the note of $367.50 of the first series, and notes Nos. 1 and 2 of the second series for $277.75 each, and that he so knew.

The evidence not being sufficient to support the finding of the jury to the fifth special issue, we sustain appellant's thirteenth proposition, and reverse and remand said cause for another trial.

GALLAGHER, C. J., and BARCUS, J. (concurring).

We concur in the reversal of the judgment of the trial court, but we do not concur in everything stated in the original opinion, and therefore file this concurring opinion.

Appellee bank based its entire cause of action on its specific allegation that in 1911, the Exchange National Bank of Fort Worth conveyed to appellee, C. A. Wirt 355¼ acres of land, and as part payment therefor took ten notes in the sum of $367.50 each, payable one each year thereafter; that prior to February 16, 1918, appellee bank paid to said Fort Worth bank, for and at the request of Wirt, all of said vendor's lien notes, and that Wirt had from time to time renewed same until the 23d day of September, 1924, when same amounted to $7,115, for which Wirt had executed to appellee bank his note. It alleged that for the purpose of paying said $7,115 note to appellee bank, Wirt had on the 15th day of July, 1925, conveyed said land to J. R. Milam Company for the use and benefit of appellee bank, and it sought to recover the title and possession of said land from said J. R. Milam Company by reason thereof.

Among other defenses and pleas for affirmative relief, appellant J. R. Milam Company alleged that it paid to the Fort Worth bank the notes that had been given by Wirt to said bank for the land in controversy, and that the lien held by the Fort Worth bank to secure the payment of the vendor's lien notes had been by said bank, together with said notes, transferred to it, J. R. Milam Company, and that by reason thereof it was entitled to a first lien on said land and entitled to a foreclosure thereof for the amount of purchase money which it had paid to the Fort Worth bank.

■ Appellant contends that the answer of the jury to special issue No. 5, namely, that the $7,115 note held by appellee bank represented money used in the purchase of vendor's lien indebtedness against the land, was wholly without support; and it further contends that the findings of the jury do not support the judgment as entered by the trial court vesting title to the land in appellee bank clear of all liens. The evident theory of the trial court in submitting said issue and in entering judgment thereon was in line with the pleadings of appellee bank that the entire amount of said note represented money paid by the bank in taking up vendor's lien notes

which Wirt had given as part of the purchase price for said land and that all of the land notes given by Wirt had been paid by the bank. The trial court, without any objection or exception by either party, submitted special issue No. 6, which asked the jury to determine whether appellant Milam Company acquired the transfer of the last eight notes of $277.75 each with funds which belonged to appellee bank. The jury failed to answer said issue. Appellee's bookkeeper testified that Wirt owed the bank on December 6, 1915, $3,050.90; that the only new money loaned by appellee bank to Wirt after said date was $210 on November 4, 1916, and $493.80 on January 9, 1917; that said two items, together with the original $3,050.90 and the accumulated interest thereon, amounted on September 23, 1924, to $7,115. On December 6, 1915, when Wirt owed appellee bank the $3,050.90, only four of the original $367.50 land notes had been paid, and Wirt testified without contradiction that he paid the first two of said notes. Said $3,050.90 note could not therefore have been entirely for purchase-money notes, and the finding of the jury as interpreted by the trial court that the entire note of $7,115 held by appellee bank represented money used by it to pay land notes given by Wirt is clearly unsupported by the evidence. On December 1, 1916, Wirt gave the Fort Worth bank ten notes for $277.75 each, payable in one to ten years thereafter, in extension and renewal of the last six of the original ten notes of $367.50 each. At the time of trial appellant had possession of the last eight of the ten renewal notes given by Wirt for $277.75 each. Its officers testified that appellant paid the Fort Worth bank for said eight notes. Each of them was regularly transferred by the Fort Worth bank to appellant. The third, fourth, and fifth notes of said series were each transferred about the time they became due, respectively, and the last five of said notes were transferred by the Fort Worth bank to appellant on December 3, 1923. On February 1, 1924, Wirt gave appellant a written renewal of said last eight notes.

■ ■ Since the record shows that appellant had possession of the last eight notes for $277.75 each, and same had been regularly transferred to it by the Fort Worth bank, and since the trial court submitted to the jury the issue as to whether appellee bank's money was used to pay for said eight notes, the implied finding by the trial court that all of the land notes given by Wirt were paid by the bank and included in the $7,115 is erroneous, and the trial court was not authorized to enter a judgment on said implied finding, vesting the title to the land in appellee bank clear of all liens. The rule is well established that the trial court cannot enter judgment upon an implied finding to an issue submitted to

the jury which was not answered, or enter judgment contrary to a finding by the jury.

■ Appellant complains of the action of the trial court in permitting appellee bank to offer in evidence a memorandum which its bookkeeper, Bridges, found in the archives of the bank attached to the Wirt note, purporting to be in the handwriting of Mr. Rob, a former employee of the bank, which memorandum stated: "Wirt says in 1924 he deeded to Milam & Company, or C. A. Milam, 355 acres of land at around $21.00 per acre to satisfy this bank's note, for a consideration of $7,500.00." Appellant objected to said memorandum because it was hearsay and self-serving. We think these objections should have been sustained and said document excluded from the jury. The witness, Bridges, did not as a matter of fact know whether Wirt had made any statement to Mr. Rob. Mr. Rob himself could not, as against appellant, have testified that Wirt told him the purported facts contained in said written memorandum. Said statements, if made by Wirt, would have been clearly hearsay as well as self-serving.

For the reasons herein stated, we concur in the reversal of the judgment of the trial court.