**GRICE v. AMERICAN NAT. INS. CO.**

No. 3538.

Court of Civil Appeals of Texas. Amarillo.
Jan. 21, 1931.

Rehearing Denied Feb. 11, 1931.

W. M. Peticolas, Jr., and Bean & Klett, all of Lubbock, for appellant.

Frank S. Anderson, of Galveston, and Bledsoe, Crenshaw & Dupree, of Lubbock, for appellee.

RANDOLPH, J.

This suit was instituted by appellant

against appellee to recover damages for breach of contract. From an adverse judgment of the trial court, rendered on an instructed verdict, this appeal is taken.

Appellant in his petition alleges that his suit is to recover damages for breach of an employment contract entered into by and between appellant and Shearn Moody, vice president of the appellee company, wherein the appellee promised and agreed to employ the appellant as medical director of this appellee, to take charge of the medical department of appellee, beginning on August 1, 1928, with the agreement and understanding that neither party could terminate the relation without giving the opposite party six months' notice, at an agreed salary of $7,500 per year. Appellant further alleged that the said Shearn Moody was authorized to enter into such contract with appellant by one W. L. Moody, Jr., president, who was the duly authorized general manager of defendant corporation, and as such had the implied or apparent power to enter into said contract. Appellant further alleges that, if W. L. Moody, Jr., did not have actual authority to manage and control said corporation, the appellee had held him out and allowed him to manage said corporation for a long period of time and was therefore estopped to deny his authority as general manager. Plaintiff also alleges that he, relying on the contract so made, removed his family, household goods, and furniture from Fort Worth, Tex., to Galveston, Tex., and that, after the refusal of appellee to comply with the contract, he was forced to take his family, household goods and furniture back to Fort Worth, Tex., and in all spent a total sum of $1,000; that, at the time he entered into the contract, the appellee knew of the circumstances that would cause appellant to spend this money, and knew that, if the contract was breached, appellant would suffer the special damages alleged, and praying for judgment for $3,750 actual damages, $1,000 special damages, and $2,500 exemplary damages.

The appellee answered by general and special demurrers, general denial, and a plea that the contract was totally executory and therefore not binding on appellee; also specially pleading that said contract was without the actual or apparent scope of either the said W. L. Moody, Jr., or Shearn Moody. In that connection appellee set out in the pleadings the provisions of the by-laws of the company which, among other things, provide that the medical director should be elected by the board of directors, that the employment and salary of all officers should be from month to month; that the directors could elect an executive committee which should fix the compensation of all officers, employees and agents of the company, subject to the confirmation of the directors. The by-laws pleaded also prescribe the duties and powers of the president, in substance, to the effect that he should preside at all meetings of the directors, and should, in connection with the executive committee, have the general care, oversight, and supervision of the affairs of the company under such instructions as the directors should give. The vice president was vested with similar power in the absence of the president or his inability to act, and might perform such other duties of the president as the emergencies of the company's business might require in the absence or inability of the president. Further pleading the provision of the by-laws that the medical director should have exclusive supervision of the medical department; that he should employ all medical examiners and make all rules necessary for their government; that he should examine every application for insurance and approve or reject same, examine all proofs of death submitted for his opinion, and perform such other duties as the president or board of directors might require, and that he should receive such compensation for his services as may be fixed by the executive committee; that under such by-laws neither the said W. L. Moody, Jr., as president, nor the said Shearn Moody, as vice president, had authority to appoint or make contracts with any person as medical director for the company, but the office of medical director of said corporation was an elective office, and the right to make such election was reserved strictly to the board of directors; that, under the by-laws, it was expressly provided that the term of employment of all officers, such as medical director, was to be from month to month, and that neither of the Moodys had authority to make a contract with the medical director providing for a longer term of employment than from month to month or requiring the giving of any period of notice of discharge for a longer time than one month; denying that the plaintiff was ever elected by the board of directors as its medical director nor was any salary ever fixed by the executive committee or confirmed by the board of directors or ratified and confirmed by them; and denying that they ever held out either of the Moodys as having authority to appoint such officers.

■ The first amended original petition, not being included in the transcript, the correctness of the trial court's ruling in sustaining the appellee's exception to the plaintiff's plea of special damages cannot be determined by us.

■ The medical director, being a general officer, the head of the medical department, and presumed to be conversant with the by-laws of the corporation, the rule that a corporation holding out an officer as being pos-

sessed with authority to transact its routine business with the public does not apply. The appellant's contention that W. L. Moody, Jr., as president and general manager of the appellee and duly authorized to manage defendant corporation, had the implied or apparent authority to enter into a contract with appellant so as to bind the company, cannot be sustained.

From section 7 of the by-laws of the appellee, it is apparent that the medical director was the head of the medical department. This section 7 provides as follows: "The medical director shall have the exclusive supervision of the medical department of the company. He shall employ all medical examiners and make all rules necessary for their government. He shall examine every application for insurance and approve or reject same, shall examine all proofs of death submitted for his opinion and shall perform such other duties as the president or board of directors may require. * * *"

It is apparent that, as such general officer, the medical director was required, in the performance of his duties, to have knowledge of the by-laws. As such officer of the corporation, he is shown to have an intimate connection with its affairs, such as places him in an entirely different position from that occupied by the general public who come in contact with the routine and ordinary business of the corporation only through its officers.

In the case of Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex. Com. App.) 235 S. W. 850, 852, cited by appellant, the transaction there involved occurred between the corporation and a member of the general public. The rule laid down in that case, in construing the by-laws and the notice to be taken thereof, is: " 'That all written contracts of importance entered into on behalf of the company such as deeds, mortgages, bonds, etc., shall be signed both by the president and secretary,' could not bind the public, when the visible authority was vested in one man, who transacted the business of the corporation for years. The by-laws of the average corporation are not usually open for public inspection; hence the public trading with it can have no notice of their contents. If it should be taken that the by-laws were a limitation upon the authority of the general manager, this is met by proof that the contents of the by-laws were not made known to plaintiff. It is a well-settled rule of law that the principal is bound by the act of the agent, done within the scope of his apparent authority in dealing with innocent third persons although such act may be in direct violation of his private instructions."

■ It will be seen that this holding was intended to apply to the routine business of the corporation with the public and not with one of its officers who was charged with knowledge of the by-laws because of their provisions as to his duties. This is also true of the other cases cited by appellant, to wit. Merriman v. Fulton, 29 Tex. 106, Farmers' Mill & Elevator Co. v. Hodges (Tex. Civ. App.) 248 S. W. 72, 77, and his citations of 14a C. J. 353, § 2214: "Although there are decisions to the effect that a person dealing with an officer or agent must take notice of limitations upon his powers imposed by by-laws, as a general rule an innocent third person who deals with the corporation through an officer or agent who is acting within his apparent authority cannot be affected by any limitations of such authority which are contained in by-laws of which he has no knowledge, unless he is charged by law with knowledge of the by-laws"—sustain our holding and show that a party having knowledge of the by-laws or being charged by law with such notice, cannot ignore such limitations as are provided in them.

In the case of M. K. & T. Ry. Co. v. Faulkner, 88 Tex. 649, 32 S. W. 883, 884, A. Waldo, acting as vice president of two railroad companies, employed Faulkner for a term of one year at a salary of $5,000 to act as general passenger and ticket agent for both companies, and Faulkner entered upon his duties and continued therein for nine months, when he was discharged by one Purdy, who had succeeded Waldo as such vice president. Faulkner sued both companies for damages for breach of the contract of employment and recovered judgment for $1,250, which was affirmed by the Court of Civil Appeals. The employment of Faulkner was with the consent and approval of H. C. Rouse, president of both companies. At the time of the employment and discharge of Faulkner, the by-laws of the Missouri Kansas & Texas Railway Company in Texas provided:

"The first vice president shall have general charge of the commercial affairs of the company, including passenger, freight, mail, and express traffic, and officers of these departments shall be appointed by him, subject to the approval of the president, and may be removed by him at pleasure."

"And the president, subject to the approval of the board of directors or executive committee, when the board is not in session, may also, from time to time, appoint such other officers, agents, and assistants as may be deemed necessary for the management of the business of the company, and fix, apportion, change, and prescribe their duties and terms of office, and fill all vacancies, and the president and vice president shall have functions as lawfully appertain to such offices, and as may be regulated from time to time by the by-laws or articles of organization."

The Supreme Court, having granted a writ of error in such cause, held as follows: "We will first determine whether it has been shown that Waldo had authority to make the contract in behalf of the Kansas Company. No statute of Kansas, nor provision of the charter of such corporation, granting such power, has been produced. So far as this record shows, the by-law above quoted is the ·sole source of the authority of the first vice president of this company. It is clear that all persons appointed by him .thereunder were removable by him or his successor at pleasure, and that, therefore, it conferred upon him no power to appoint or employ Faulkner for a fixed period of one year, without power of removal. We are of the opinion that Faulkner, when appointed, was an officer of the passenger department, within the meaning of said by-law, for the record shows that when appointed he had 'entire charge of all passenger and ticket matters of the system,' which included both roads. Any other construction would render the by-law nugatory. If, however, he was not included, such fact would not avail him anything, for then there would not appear, from the record, any power in Waldo to employ him at all. It is contended that Faulkner had no notice of the limitation upon Waldo's power, and is therefore not bound by it. This contention cannot be maintained, because (1) Waldo's power under said by-law did not extend to the employment of any one, except subject to the power of the first vice president to discharge at pleasure; and (2) if that be not true, still he, in dealing with this officer of the corporation, was chargeable with notice of the limitation upon such officer's power contained in the very by-law conferring the power to contract with him. As said by Cooley, J., in Rice v. Peninsular Club [52 Mich. 87], 17 N. W. 708, 'A party dealing with the agent of a corporation must, at his peril, ascertain what authority the agent possesses, and is not at liberty to charge the corporation by relying upon the agents assumption of authority, which may prove, as it did in this case, to be entirely unfounded.'"

Article 4712, R. C. S. 1925, provides that the directors may establish such by-laws and regulations, not inconsistent with law, as shall appear to them necessary for the regulation of the corporation's business. Under the holding in the Faulkner Case quoted, the appellant was charged with notice of the by-laws of the company of which he was a department head.

The trial court having correctly determined the lack of authority vested in W. L. Moody, Jr., as president, to appoint the appellant as medical director of the appellee, we affirm the judgment of the trial court.