**SOUTHWEST GAS CO. v. DONEY et al.**

**No. 10174.**

Court of Civil Appeals of Texas. Galveston.

June 18, 1936.

Rehearing Denied Dec. 17, 1936.

1108

Homer L. Bruce, Tom M. Davis, and Baker, Botts, Andrews & Wharton, all of Houston, for appellant.

Williams, Lee, Sears & Kennerly and Fred W. Moore, all of Houston, for appellee Louden C. Doney, Jr.

GRAVES, Justice.

The sole question involved in this record of 1,959 pages (1,312 of it statement of facts, 440 briefs of the parties, and 207 in the transcript) is: Which of the parties, appellant corporation, or the individual appellee, Doney, is entitled to a 1,000-share certificate—with a par value of $100 per share—of appellant's preferred stock issued in the name of C. O. Moore on May 25 of 1927,

and held as stakeholder by appellee Bankers Mortgage Company, a corporation, under a tripartite escrow agreement of September 12 of 1927, between C. O. Moore, first party, appellee Doney, second party, and appellee mortgage company, third party?

What the trial court determined to be the ultimate issues of fact underlying the controversy were submitted over appellant's objections to a jury and all answered in appellee Doney's favor, whereupon the court, upon such verdict, as well as in response to its own findings upon the law and the evidence, entered a judgment in the appellee Doney's favor, awarding the disputed stock to him, together with a recovery for him against the appellant of $31,500 accrued dividends thereon, and directing the mortgage company, as such stakeholder, to turn the certificate over to Doney; from that determination below the appellant prosecutes this appeal.

The controversy grew out of the promotion and organization of the appellant company by four individuals—the appellee Doney, O. R. Seagraves, acting through the Houston Gulf Gas Company, J. W. Colvin, and Paul Kayser—to take over certain gas franchises, rights, and properties held under a contract between appellees C. O. Moore and L. C. Doney, dated April 2 of 1927, which constituted the main forerunner of and basis for the escrow agreement herein sued upon of September 12 of 1927, and referred to supra; the properties, rights, and franchises, with which the cited contract and escrow agreement had to do, finally by mesne conveyance and transfer passed into this appellant corporation that so originated.

The appellant company in this court earnestly insists that, notwithstanding the verdict, there was no legal basis whatever for the trial court's adverse judgment to it herein, in consequence of which it should have a rendition here, in the alternative further urging that a remand in its favor should be ordered upon a number of specified procedural errors alleged to have been committed by the trial court in so disposing of the cause there.

In support of the structural demand for a rendition, these are the main points relied upon:

(a) The company never received any consideration for the stock, although the law forbade the issuance of the stock except for money paid, labor done, or property received, equal to the $100,000 par value of the stock.

(b) Although the law and the company's charter provided that the stock could be issued only as the board of directors should direct, the board of directors never authorized or ratified any agreement, or arrangement, under which Doney could ever have any interest in the stock.

(c) Since Doney claimed that he was entitled to the stock for services performed prior to the incorporation of Southwest Gas Company those services were not a sufficient and legal consideration for the company to give him any right to the stock, even if the board of directors had attempted to do so.

(d) As Doney was a director of the Southwest Gas Company, he could not obtain any interest in this stock without making a full and fair disclosure to the board of directors of any arrangement or agreement that he might have for the acquisition of such interest in said stock, assuming that he could in some manner have acquired an interest therein, and Doney made no disclosure of any kind to the board of directors as a whole or to the individual members thereof, the only conversation or discussion that he had with any director being with J. W. Colvin, a director and president, with whom Doney claimed that he had made a verbal agreement under which he was to get his asserted interest in this stock. It does not appear that any other member of the board of directors was ever apprised of that agreement by either Doney or Colvin, and the latter denies that such an agreement was ever made. * * *

(e) The stock in controversy was originally issued by appellant for a contingent consideration, which wholly failed, hence thereafter it was not validly outstanding, because the corporation had received nothing therefor, in consideration of which it could have been transferred to appellee Doney, even had such transaction been authorized or ratified by its board of directors.

(f) The general resolutions passed respectively by appellant's board of directors and its stockholders, upon which the appellee Doney relies as consituting the transfer of this stock to him, cannot be given any such effect, because there was no evidence whatever that any of such directors or stockholders, other than Colvin and Doney, ever knew of, authorized, or ratified any agreement that may have been made between Colvin and Doney, whereby the latter would

get this escrow-stock if it did not go to C. O. Moore.

The principal procedural objections referred to relate:

(1) To the exclusion of proffered testimony by Paul Kayser to the effect that he used Doney's name in the cited escrow agreement for and in behalf of and as representing appellant.

(2) To the exclusion of Main & Co.'s audit, which, it was contended, had been properly identified as the audit submitted to both the directors and stockholders of the appellant at their February, 1928, meeting.

(3) To the exclusion of certain voucher entries purportedly from appellant's books and records, together with the testimony of the witness Viebig; offered for the purpose of identifying certain original records and book entries of appellant, as well as to explain such entries from a bookkeeping standpoint.

In contrast to the controlling reaches of the cause, as thus promulgated by the appellant upon both the trial below and this appeal, the learned trial court conceived it to be determinable upon these questions of fact, as recited supra, which it submitted to—and which were answered by—the jury as follows:

"No. 1. Do you find from a proponderance of the evidence that J. W. Colvin, while President of Southwest Gas Company, agreed with L. C. Doney, Jr., that the said Doney was to own the thousand shares of preferred stock placed in escrow if C. O. Moore did not receive same in accordance with the escrow contract? Yes.

"No. 2. If you have answered the next preceding special issue 'Yes', and only in that event, then answer this issue: Do you find from a preponderance of the evidence that J. W. Colvin was acting at the time of said agreement, if any, in his official capacity as President of Southwest Gas Company? He was.

"No. 3. If you have answered the next preceding special issue 'He was,' and only in that event, then answer this issue: Do you find from a preponderance of the evidence that the board of directors of Southwest Gas Company authorized J. W. Colvin, acting in his capacity as President of Southwest Gas Company (if you have found that he was so acting) to make said agreement with L. C. Doney, Jr., (if you have found that said agreement was made)? Yes.

"In connection with this issue and any other issue in which the word 'authorize' may appear in this charge, you are instructed that the meaning of the word 'authorize' as used in this charge, is to empower or to give a right to act.

"No. 4. If you have answered special issue No. 2 'He was', and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that the board of directors of Southwest Gas Company learned that said agreement, if any, was made between J. W. Colvin, acting in his capacity as President of Southwest Gas Company (if you have found that he was so acting) and L. C. Doney, Jr., after said agreement had been made (if you have found that it was made)? Yes.

"No. 5. If you have answered the next preceding special issue 'Yes', and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that the board of directors of Southwest Gas Company approved the act of J. W. Colvin acting in his capacity as President of Southwest Gas Company (if such act and such capacity you have found) in making said agreement with L. C. Doney, Jr., (if you have found that such agreement was made)? Yes.

"In connection with this special issue and any other special issue where the word 'approve' may appear, you are instructed that in this charge to approve means to confirm, to give sanction to.

"No. 5-A. If you have answered special issue No. 2 'He was', and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that J. W. Colvin, as President of Southwest Gas Company, had apparent authority, as that term is herein defined, to make an agreement, if any, with L. C. Doney, Jr., that said Doney was to own the 1000 share stock certificate placed in escrow if C. O. Moore did not get the same under the terms of the escrow agreement? Yes.

"By the term 'apparent authority' as used herein is meant such authority as a person of ordinary prudence and intelligence, conversant with business usages and the nature of the business in which Southwest Gas Company was engaged, would be justified in believing J. W. Colvin possessed, because of the situation in which he was placed and the duties and powers known to have been granted him, and because of the powers known to be exercised by him with knowl-

edge and permission of Southwest Gas Company.

"No. 6. If you have answered special issue No. 2 'He was', and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that the agreement between J. W. Colvin, acting in his capacity as President of Southwest Gas Company, and L. C. Doney, Jr., (if any such agreement and capacity you have found) was made for services which had been performed by L. C. Doney, Jr., if any, prior to said company's incorporation, and his interest in property, if any, acquired by the Southwest Gas Company? Yes.

"No. 7. Do you find from a preponderance of the evidence that prior to the incorporation of Southwest Gas Company, J. W. Colvin agreed with L. C. Doney, Jr., that the thousand-share certificate placed in escrow would belong to the said L. C. Doney, Jr., if C. O. Moore did not receive the same under the terms of the escrow contract contemplated in the contract of April 2, 1927? Yes.

"No. 8. If you have answered special issue No. 2 'He was', or if you have answered special issue No. 7 'Yes', and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that the name of L. C. Doney, Jr., was used in the escrow-contract dated September 12, 1927, for the benefit of the said L. C. Doney, Jr., and not for the benefit of Southwest Gas Company? For Doney's benefit.

"No. 9. If you have answered special issue No. 7 'Yes', and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that the board of directors of Southwest Gas Company approved the act of J. W. Colvin in making said agreement with L. C. Doney, Jr., prior to the incorporation of Southwest Gas Company, if in fact said agreement was made? Yes.

"No. 10. If you have answered special issue No. 7 'Yes', and only in that event, then answer this special issue: Do you find from a preponderance of the evidence that the agreement between J. W. Colvin and L. C. Doney, Jr., made prior to the incorporation of Southwest Gas Company, if any such agreement you have found, was made for services which had been performed, if any, prior to said company's incorporation, by L. C. Doney, Jr., and his interest in property, if any, acquired by Southwest Gas Company? It was.

"No. 11. Do you find from a preponderance of the evidence that the board of directors of Southwest Gas Company authorized the issuance of the one thousand shares of preferred stock placed in escrow in the Bankers Mortgage Company solely for the purpose of using same in purchasing the C. O. Moore properties under the terms and provisions of the contract dated April 2, 1927? No."

■■■ After considering these two contrasting appraisals from the perspective of an appellate review, it is determined that the trial court was right—that the questions of fact it submitted were raised by the pleadings and evidence, especially those as to what the consideration was, both for the transfer by Doney to Colvin, and that of Colvin and Evans to the appellant; neither, so reviewing what the material issues of the controversy were, is there found any lack in the evidence to sustain the findings made by the jury; they must, therefore, be regarded on the appeal as established facts; not only so, but such additional findings as may be determined to be necessary to support the judgment will be deemed to have been made by the court itself as there is evidence to substantiate.

Indeed, a careful examination of the statement of facts discloses that the learned trial court, when it came to render the judgment herein, with the aid of the quoted verdict the jury had returned, was fully authorized to take as true all these averments of fact made by the appellee in his pleadings:

"That appellee was the originator of the idea and plan of forming the Southwest Gas Company; that he associated J. W. Colvin with him with the agreement that the profits, stocks, or anything else of value derived from the enterprise, would be shared equally between them; that Colvin, with the consent of appellee, secured the services of Paul Kayser an attorney; that Colvin, Doney, Kayser, and Houston Gulf Gas Company were to receive stock of the Southwest Gas Company for their services in the organization of same; that prior to organization of the company appellee secured the various franchises and properties described in the agreement of April 2, 1927; that they gave Kayser a power of attorney, who, as Doney's agent, it being so recited on the face of the agreement, made a transfer thereof to Colvin about May 11, 1927, who in turn transferred the properties, along with Howell Evans, unto Southwest Gas Company; that appellee made said transfer

in consideration of an agreement with Colvin that—instead of sharing equally, as they had at first agreed—Colvin would have a larger interest in the common-stock and appellee Doney would have a larger interest in the preferred-stock, including the 1000-share certificate placed in escrow, which belonged to Doney; that Colvin, acting as president of the Southwest Gas Company, requested appellee to agree to the depositing of appellee's 1000-share certificate in escrow, and appellee agreed to do that, pursuant to said agreement; that the escrow-contract was drawn correctly, providing that Doney was to get said certificate, if C. O. Moore did not get it, and the deposit of said stock was made pursuant to that agreement; that said agreement was made in consideration of services furnished and work done, and the properties and franchises and contracts appellee had secured and transferred; that the Southwest Gas Company had adopted and ratified the agreement by authorizing Kayser to prepare said escrow-agreement of September 12, 1927, which was correctly written; that appellee had carried out his agreement with Colvin and transferred to him 733 shares of the stock of the Codoseka Corporation, being the equivalent of 2500 shares of the common voting-stock of Southwest Gas Company, thereby giving Colvin control of the stock of Codoseka Corporation; that after securing said control of the voting-stock, Colvin demanded that he resign, which he did in the spring of 1928."

The two controlling contracts here involved—that of April 2, 1927, between Doney and Moore, whereby the latter's gas properties went to the former, and that of September 12, 1927, between the same two, in escrow, with the mortgage company as stakeholder, whereby if the properties did not produce enough for Moore to get all the agreed consideration for his transfer, $100,000 of it in the stock of appellant was to go to the former, Doney—were both in writing, and the later one, the escrow agreement, was entered into some four months after the corporation (that is, the appellant) contemplated by the first one had in fact been organized.

■ This differentiates the situation here presented from that ruled by the railway cases relied upon by appellant in this connection, all those promoters' contracts having been made prior to the formation of the company; whereas in this instance the escrow agreement—made four months after the formation of this corporation—expressly confirmed the prior agreement between the promoters, and upon its face also recognizing the outstanding character of this certificate of stock as belonging to the appellee Doney, in the event that the properties did not produce what Moore had guaranteed they would, and further specifically making it payable to Doney; so that, as the other details of the evidence show, Doney here had a verbal contract with the corporation's president, a written contract prepared by its attorney that it recognized on the day of its execution by a letter signed by its president, an original of which contract was delivered to the corporation and retained by it for five years without the corporation's indicating by any claim on Doney during that entire time that it did not recognize the agreement as being what its face thus purported; in other words, Doney conveyed his interest in the properties he got under his contract with Moore to this appellant-corporation through Colvin, which the latter agreed to pay him for, through Colvin's agreement to that effect, and through its own acceptance of the contract, as well as the passing of a resolution at the organization meeting of the corporation so providing; the case in this respect here presented, therefore, would seem to come within the rule thus stated in 10 Texas Jurisprudence at page 605:

"The case is different where property has been delivered to the promoter, and ownership of it assumed by the corporation. Such acceptance of the property necessarily involves the obligation of paying for it. Thus the corporation, by receiving and holding the property, is estopped from denying the validity of mortgages executed over the property prior to incorporation." See, also, Dealers' Corporation v. Faubion (Tex.Civ. App.) 18 S.W.(2d) 737; Hart-Toole Co. v. Shahan (Tex.Civ.App.) 220 S.W. 181; Thorndale Co. v. Gin Co. (Tex.Civ.App.) 217 S.W. 1059; Lancaster Gin & Compress Co. v. Murray Ginning System Co., 19 Tex. Civ.App. 110, 47 S.W. 387; Gutherie v. Country Club Co. (Tex.Civ.App.) 26 S.W. (2d) 403.

■ Neither was this stock issued for a contingent consideration, as is urged by the appellant, there being nothing contingent about it or its issuance except the mere matter as to whether it should be paid to Moore or Doney; that sole contingency was perforce resolved in Doney's favor when it undisputedly developed that the properties had produced within the specified five years' time only $217,450 of the $600,000 Moore guaranteed they would, whereupon he (in

effect) acknowledged that his conditional interest in the certificate had become eliminated and made no claim thereto, thus completely clearing it of the only condition that ever had been superimposed upon it and leaving it for disposition between appellant and the appellee, according to their inter sese arrangements and understandings about it.

The certificate had been regularly and unconditionally issued through Paul Kayser as appellant's vice president on May 25 of 1927, expressly payable to C. O. Moore, thus quickly following the organization of the corporation itself on May 11 of 1927, and had four months thereafter been subjected to the new agreement evidenced by the escrow contract, whereby the named payee had been changed to Doney—after, as he testified, he had not only protested that they had agreed to pay Moore too much, but had also informed them he was sure Moore would not get the certificate, because the earnings from his properties would not equal his guaranty.

Under these considerations, it seems clear that appellant could not defeat the vesting of this promise to pay in the appellee, upon any of the claims interposed against it, especially those to the effect that it was ultra vires the powers of the corporation, and issued for a contingency consideration that wholly failed.

Especially so, because appellant's by-laws in this instance not only constituted Colvin as its president general manager of its business, thereby making his powers coextensive with those of the corporation itself, but also by resolution of its board of directors it specifically conferred upon him as president, as well as Kayser as its vice president, full discretion to do for it whatever was necessary and useful with regard to: "(1) The payment for the properties described in the assignment to the company from Colvin and Evans, which necessarily included paying Doney in stock; (2) the assumption by the company of all the obligations and liabilities (of grantors, Colvin and Evans) of every kind and character growing out of or incident to the performance of the contracts, franchises, etc., described in said assignment from such grantors, dated May 16, 1927; and (3) the indemnification of these grantors and the agreement to hold them harmless from any and all liability, loss, or damage, of any kind or character, growing out of or incident to these contracts and the performance thereof." Booker-Jones Oil

Co. v. National Co., 63 Tex.Civ.App. 142, 131 S.W. 623, 132 S.W. 815; Corpus Juris, Vol. 14A, p. 359; Fletcher, Cyc. of Corporations, Vol. 8, § 4196, p. 746; Grice v. American Nat. Ins. Co. (Tex.Civ.App.) 35 S.W.(2d) 204; Hinton v. D'Yarmett (Tex. Civ.App.) 212 S.W. 518; Hotel Woodward Co. v. Ford Motor Co. (C.C.A.) 258 F. 322; Sealy Oil Mill & Mfg. Co. v. Bishop Mfg. Co. (Tex.Com.App.) 235 S.W. 850.

Furthermore, it is thought that, under the authorities next herein cited, the directors of appellant will be held, as a matter of law, to have had notice of Colvin's agreement as its president with Doney on account of the fact—as herein before stated—that all the contracts and writings evidencing all of the details of the transactions with which this litigation has to do were in the files of the appellant company and were kept there by it for more than five years without its having made any of the claims against Doney asserted by it in this suit, or any denial that it recognized all that while the ownership in him of the certificate herein sued upon by him. College Park Electric Belt Line v. Ide, 15 Tex.Civ.App. 273, 40 S.W. 64; Fitch v. Maverick County Water Control & Improvement Dist. (Tex.Civ.App.) 58 S.W.(2d) 837; Fletcher's Cyc. on Corporations, Vol. 3, p. 67; Merchants' & Manufacturers' Sec. Co. v. Wright (Tex.Civ.App.) 59 S.W.(2d) 1097; Seale v. Baker, 70 Tex. 283, 7 S.W. 742, 8 Am.St.Rep. 592; Tex.Jur. Vol. 11, p. 9, § 363; White Point Co. v. Dunn (Tex.Civ. App.) 18 S.W.(2d) 267.

In Texas it has become the settled law that a corporation is estopped to plead ultra vires, or lack of authority of its agent, where its funds or assets have been augmented by the property it received under alleged unlawful or unauthorized transactions. 10 Texas Juris. 904; Itasca Co. v. Wooten (Tex.Civ.App.) 246 S.W. 678; Long Co. v. Hampton (Tex.Civ.App.) 20 S.W. (2d) 1081; Canadian Co. v. Seiger (Tex. Civ.App.) 159 S.W. 897; Knowles v. Northern Texas Co. (Tex.Civ.App.) 121 S.W. 232.

In the circumstances, the complaints made against the exclusion of the evidence items referred to supra, are not thought to be well taken.

1. Paul Kayser signed the escrow agreement on September 12 of 1927 as "Louden C. Doney, Jr., by Paul Kayser, Agent and Attorney," hence it would have been improper to permit him on this trial

to testify that he had used Doney's name in that instrument for and in behalf of and as representing the appellant, he being estopped as against his principal Doney from thereafter by parol varying the capacity in which he had so signed, and of denying any rights or titles that might have become vested in Doney by virtue of that written instrument; particularly so, when the pleadings and evidence otherwise fail to show or assert any authority in the appellant to use Doney's name for its own purposes in the making of that writing, there being further no averment that Kayser had so executed it for Doney as an individual through any fraud or mistake.

■ 2. Main & Co.'s audit, dated February 1, 1928, was properly refused admittance, because appellant had failed to prove it up by the person making it, namely, G. I. Hill, who testified that he was unable to identify or verify it as such.

■ 3. The purported voucher entries of appellant's books seem to have been mere hearsay conclusions or opinions of accountants made long after the transactions reflected therein by individuals who had had no connection with such transactions, and in some instances who had been employed by the appellant quite a while subsequent thereto; the witness Viebig, whose testimony was offered in identification and explanation of such records, was shown not to have been employed by the appellant as an accountant or bookkeeper until October of 1927; the earliest entry made by him was in December of 1928, one and one-half years after the organization meeting of the appellant corporation, and over a year after the signing of the escrow agreement of September 12 of 1927; consequently, his testimony as to such record entries constituted likewise hearsay conclusions, and self-serving declarations; these authorities are cited as supporting the evidence rulings so made: Belt v. McGehee (Tex.Civ.App.) 9 S.W.(2d) 407; Dewees v. Bluntzer, 70 Tex. 406, 7 S.W. 820; Ellis v. Randle, 24 Tex.Civ.App. 475, 60 S.W. 462; Fletcher v. First Nat. Bank (Tex.Civ.App.) 126 S.W. 936; Ft. Worth & R. G. R. Co. v. Cauble, 41 Tex.Civ.App. 348, 91 S.W. 244; Jones on Evidence, Vol. 4, pp. 3177-3182; J. R. Milam Co. v. First Nat. Bank (Tex.Civ.App.) 29 S.W.(2d) 480.

Without further discussion, under the conclusions that, in the peculiarly individual facts and circumstances here obtaining, the learned trial court applied proper principles of law, and that in so doing no prejudicial trial errors were committed, the judgment so rendered there will be affirmed.

Affirmed.

### On Motion for Rehearing.

■ Appellant's extended motion for rehearing has had the laborious consideration of this court; last July when, at appellant's request, the determination of the motion was postponed until after the summer recess of the court, counsel for both sides were requested, for the court's benefit, to carefully re-examine the record and statement of facts and to thereafter file among the papers here their views as to whether or not the facts as recited in the original opinion filed herein on June 18 of 1936 were in conformity with the record; they have graciously done that, thereby materially assisting the court in its extended reconsideration of the cause on rehearing; as a result, the appellant's counsel finds many errors of both form and substance in our original opinion, and requests this court to make many specified additional findings, inclusive of enumerated writings and other written proceedings that were involved below; it seems obvious that no such duty rests upon this court, especially as the granting of this request would entail the recitation of evidence rather than the finding of facts themselves, which would simply tend to conflict with the findings heretofore made and in great part, at least, further go to merely evidentiary rather than controlling matters; furthermore, since the substance of the documents sought—in so far as deemed material—was fully stated in the opinion, it would be a work of supererogation; wherefore, the requested findings should not be made. 3 Tex.Jur. pp. 1120, 1122; Texas Tram & Lumber Co. v. Gwin, 29 Tex.Civ. App. 1, 67 S.W. 892, 68 S.W. 721; Galveston, H. & S. A. Ry. Co. v. Arispe, 5 Tex. Civ.App. 611, 23 S.W. 928, 24 S.W. 33; Houston & T. C. Ry. Co. v. Davis (Tex. Civ.App.) 32 S.W. 163; Order of United Commercial Travelers v. Roth (Tex.Civ. App.) 159 S.W. 176.

Neither in other respects is the motion deemed well taken; on the contrary, after the painstaking reconsideration, this court it constrained to adhere to its former disposition of the cause, in the final conclusion that it was then properly decided.

The appellees' counsel, upon the other hand, in a detailed review of the findings as formerly made, has found nothing structural, or of material substance, that was errone-

ously stated in the former opinion, but has, however, pointed out these inaccuracies; That the word "they" in line 8 from bottom of column 2, page 1111 of 99 S.W.(2d) in the expression "that they gave Kayser," etc., should be "Doney," so as to read "that Doney gave Kayser"; that correction is accordingly made; further, that the quotation marks on the specifications (a), (b), (c), (d), (e), and (f) on pages 1109 and 1110 of the opinion should be removed; that accordingly is now done.

Aside from the corrections thus made, it is not thought that any material inadvertence otherwise in the collation of the complicated facts originally made has been pointed out; the motion will therefore be overruled.

Overruled.

Rehearing refused.