CASE 60—ACTION FOR RECEIVER AND TO DISCOVER ASSETS OF DEFEND-
ANT—MAY 10.

# Farmers' Bank of Ky. v. Ohio River Line Steamboat Co.   Same v. Barret & Others.

APPEAL FROM HENDERSON CIRCUIT COURT.

BOTH PARTIES APPEAL FROM THE JUDGMENT OF THE LOWER COURT..
JUDGMENT REVERSED.

CORPORATIONS—POWER TO EXECUTE MORTGAGE—PLEDGES OF STOCK—
STOCKHOLDERS BOUND BY JUDGMENTS AGAINST CORPORATION—DOCTRINE
OF ULTRA VIRES.

Held:    1. Where a steamboat company was organized for the pur-
pose of acquiring and operating certain boats, the assumption by
the corporation of a debt which the seller of the boats had con-
tracted in the construction of the boats, and the execution of a
mortgage to secure the debt, were within the powers of the
corporation—especially when done with the approval of all of
the stockholders.

2. Pledgees of the stock of a corporation to secure a debt of the stock-
holder are stockholders, and not creditors, of the corporation,
and are bound by a judgment for debt against the corporation
until it is reversed or set aside in a direct action instituted for
that purpose.

3. It is a well recognized rule in courts of equity that the doctrine
of *ultra vires* should not be allowed to prevail where it would
defeat the ends of justice or work a legal wrong, and certainly
it should not be invoked in a case like this to defeat the effect
of an agreement which is clearly within the scope of the powers
of a corporation of this character.

Farmers' Bk. of Ky. v. Ohio River Line Steamboat Co.    Same
v. Barret et als.

CLAY & CLAY and M. C. & G. D. GIVENS, Attorneys for Appel-
LANT.

1. The judgment of the Farmers' Bank of Kentucky v. the Ohio
   River Steamboat Company, rendered by the Henderson Circuit
   Court in 1896, is conclusive of the matters involved in this case.
   Freeman of Judgments, secs. 177-178; Black on Judgments, sec.
   583; Van Fleet's Former Adjudication, pages 995 to 998; Thomp-
   son on Corporations, secs. 3392-3; Beech on Private Corpora-
   tions, 726; Morawetz on Private Corporations, sec. 865; Her-
   man on Estoppel, page 164; Nichols v. Stephens, 25 S. W. R.,
   578; Hawkins v. Glenn, 131 U. S., 319.
2. The plaintiffs have no right to sue in this form without al-
   leging insolvency on the part of Perkins.   Barton v. Barton,
   80 Ky., 212; Mackeys v. Pfeifer, 80 Ky., 600; Kyle v. O'Neil, 88
   Ky., 127.
3. That the consideration was ample to uphold the mortgage and
   notes.   Nat. Bank of Cynthiana v. Mattingly, 18 Ky. Law Rep.,
   425.
4. The contract of insurance is, and was, valid, and not *ultra vires*.
   The bank had an insurable interest in the steamer Royal.   May
   on Insurance, secs. 6 and 90.
5. A co-surety may buy in a note and preserve all the rights and
   liabilities of a payee, and it does not stop the running of the
   statute of limitations on the original contract.   Smith v. Lati-
   mer, 15 B. M., 75; Keller v. Williams, 10 Bush, 216; Veach
   v. Vickershan, 11 Bush, 261.

S. B. & R. D. VANCE, Attorneys for appellees.

1. Evidence of consideration of the notes in the pleadings men-
   tioned shows that the note for $23,100 was given for money
   loaned to C. G. Perkins, while only that for $4,900 was for
   money borrowed by the steamboat company.   And that there
   was no other consideration for the transfer of the property
   of the steamboat company to the said bank.
2. The uncontroverted averments of the petition and the evidence
   show:
   (a) That the certificate No. 6 for forty shares of the capital stock
   of said steamboat company held by Barret & Witt was trans-
   ferred to them by Perkins to indemnify them as his co-sureties
   for payment of his agreed and settled proportion of the note
   to Campbell.
   (b) That the certificate No. 7 held by Market Nat. Bank of
   Boston, for 100 shares of said stock, was pledged by said
   Perkins as collateral security for his note, on which its judg-
   ment was rendered; and both before the transactions with the
   bank in the pleading mentioned.
3. It having been agreed between Perkins and Barret & Witt that
   Perkins was to pay 5-13 of the said note, it was not necessary
   that his co-sureties, having paid his agreed *pro rata*, should, in
   their action to recover it of him, aver the insolvency of the
   principal in the note.
4. Barret & Witt having, as his co-sureties, paid Perkins the agreed
   *pro rata* of said debt, their right of action is on his implied
   assumpsit as co-surety, and would not be barred until five

years after the payment.  The mere assignment of a note by
the payee to a surety does not substitute the latter to the
rights of the formr on the note.  Lansdale v. Cox, 7 Mon., 401;
Brandt's Suretyship and Guaranty, sec. 220; Joyce v. Joyce's
Admr., 1 Bush, 474; Bridges v. Reid, 9 Bush, 329.

5. The property of the steamboat company having been transferred
by its directors without authority and without consideration,
the plaintiffs, pledgees of its stock, have the right to sue for
its recovery without a return of "no property found" as to the
pledgor; nor are they estopped by judgment in favor of the
bank against the corporation, and such directors in an action
wherein they alone represent the company.  2 Cook on Stock-
holders, secs. 645, 735, page 1137, N (5) secs. 741, 737, 663, 743;
Do., vol. 1, sec. 432; Baldwin v. Campbell, 26 Minn., 43; Camp-
bell v. Amr. M. Co., 122 N. Y., 455; 1 Morawetz, secs. 242, 245,
249, 256, 258; Rupell v. Wakefield Water' Works Co., cited 1
Morawetz, sec. 155; Ibid, secs. 284, 285, 411, 412; Prather v.
Wissiger, 10 Bush, 117; Railroad Co.  v.  Bowles'  Heirs,  9
Bush, 468.

6. Pledged stock need not be transferred on books of the company.
Thurber v. Crump, 86 Ky., 408.

7. The insurance by the company of its property, though payable
to the bank, is available to it only to the extent of the com-
pany's debt.  May on Ins. (3d ed.), vol. 2, sec. 452 "C"; 15 Am.
& Eng., page 818.

OPINION OF THE COURT BY JUDGE BURNAM—REVERSING.

The plaintiffs (appellees here), John H. Barret, B. G.
Witt, and the Market National Bank of Boston, were
creditors of the defendant, C. G. Perkins.  By assignment
from Perkins, Barret and Witt held certificate No. 6,
for forty shares of the capital stock of the Ohio River
Line Steamboat Company, as collateral security to in-
demnify them against loss as co-securities with Perkins
upon a note due by the Henderson Buggy Company to one
G. W. Campbell, for $3,333.33, dated April 25, 1899, and
due in one year after date, while the Market National
Bank held a similar certificate for 100 shares of the cap-
ital stock of the same corporation, which was pledged
by Perkins as collateral security to secure the payment
of a judgment rendered against him in favor of plaintiff
in the circuit court of the United States for the district

of Kentucky on the 28th day of January, 1895, for the
sum of $10,000, with interest from March 26, 1894; and on
the 25th day of August, 1897, this suit was instituted,
seeking to subject the interest of Perkins, represented
by these certificates of stock in the steamboat company,
to the payment of their respective demands.   They allege
in substance, that at the time of the transfer to them of
these certificates of stock the steamboat company was
the owner and in possession of two steamboats (one named
"Royal," and the other "Jewell"); that subsequently
thereto, on the 4th day of February, 1895, Perkins and J.
B. Thompson, who were the president and secretary of the
steamboat company, and a majority of its directors, and
who owned the most of its stock and had absolute control
of its affairs, executed and delivered to the defendant
the Farmers' Bank of Kentucky a mortgage on these
steamboats, their furniture, outfit, and accoutrements, to
secure two promissory notes (one for $23,100, and the
other for $4,900), due and payable in four months after
date; that the steamer Royal was destroyed by fire, and was
insured for $15,000, which was paid to the Farmers' Bank,
and credited upon the $23,100 obligation; and that Per-
kins and Thompson had sold and delivered the steamer
Jewell to the said Farmers' Bank, to be credited upon
these obligations.   They further allege that the debt for
which the mortgage was executed to the Farmers' Bank
was not a debt of the steamboat company, and that there
was no consideration given or paid to it for the execution
of the mortgage; that the steamboats were the only prop-
erty owned by the steamboat company; that it was in-
solvent; and that the defendant, the Farmers' Bank of
Kentucky, holds the steamboat Jewell, and the proceeds

of the insurance paid to it, as trustee for the creditors
and holders of the stock of the company. The articles
of incorporation of the steamboat company are set forth
in the petition, and show that the capital stock of the
company was $50,000, divided up in 1,000 shares, of $50
each; that C. G. Perkins owned 599 shares, his wife, An-
nie T. Perkins, 200 shares; J. B. Thompson, 200 shares,
and Robert D. Vance, one share. They charge that the ex-
ecution of the mortgage, and the payment of the insur-
ance money, and delivery of the steamboat Jewell to the
bank were in violation of their rights as holders of the
stock under the assignment from Perkins, and that they
are entitled to receive their *pro rata* of these assets of
the company, and ask that a receiver be appointed to
take charge of the property of the steamboat company,
and for a reference to the commissioner to ascertain their
share of such assets according to the stock held by them.

The defendant, Perkins, for answer to the petition of
Barret and Witt, says that he was only a surety on the
note to Campbell; that the note was due on the 25th day
of April, 1899, and that Campbell's cause of action accrued
on that day; that more than seven years had elapsed from
the maturity of that note to the filing of this suit; and
he pleads and relies upon the statute of limitation as a de-
fense thereto.

The Farmers' Bank of Kentucky in its answer contro-
verts the material allegations of the petition which are
inconsistent with its right to subject the property, and
avers that on the 4th day of February, 1895, the defend-
ant, the Ohio River Line Steamboat Company, for value
received, executed and delivered to it its two promissory
notes (one for $23,100, and the other for $4,900), due four

months after date; that to secure the payment thereof the steamboat company executed and delivered to it a mortgage upon its two boats; that there was paid thereon, out of the insurance money arising from the destruction of the Royal, the sum of $13,577.75, leaving due and owing to it a balance of $14,422.25; that on the 22d day of April, 1896, it instituted suit for the collection of this balance, and the enforcement of the mortgage lien upon the Jewell, and on the 26th day of June, 1896, a judgment was rendered for the amount of such balance, and for an enforcement of its lien by a sale of the steamboat, Jewell, to satisfy such balance, which was had, and the proceeds of such sale applied as a credit upon the judgment; that this judgment has never been appealed from, vacated, or modified, and is conclusive against the holders of the stock in the steamboat corporation, and of all the matters involved in this case.

The pleadings being made up, on final trial the chancellor set aside the judgment of the Farmers' Bank against the steamboat company, but confirmed the sale of the steamer Jewell thereunder, and decided that the bank was liable as trustee for the money arising from the insurance on the Royal and sale of the Jewell, subject to credits of $2,700 and $4,900, amounting in the aggregate to $7,600, which were found to be the debts of the Ohio River Line Steamboat Company; held that the balance of the $23,100 note was the individual debt of C. G. Perkins, and to that extent the note and mortgage were void as against the steamboat company; and directed that the overplus of the proceeds arising from the insurance policy and the sale of the Jewell should be paid to the receiver, for the benefit of the stockholders of the steam-

Vol. 108]       APRIL TERM, 1900.              453

Farmers' Bk. of Ky. v. Ohio River Line Steamboat Co. · Same
v. Barret et als.

boat company. Exceptions were taken to this judgment both by plaintiffs and defendants, and both have appeal-ed to this court.

The facts out of which this controversy arose, as shown by the bill of exceptions, are as follows: Perkins testifies that he built the steamboat Royal in 1892, and was the sole owner thereof; that subsequently, in 1893, he and J. B. Thompson built the steamboat Jewell in partnership, he being the owner of two-thirds, and Thompson of one-third; that the whole sum of the note for $23,100 was for money borrowed and used by him in the construction of the two boats, except $6,250, which was borrowed by him for another purpose upon his individual credit; that the whole of the $4,900 note was borrowed for the use of the steamboat company after its organization; that at the time the money was borrowed from the bank for the construction of the boats the bank knew for what purpose it was being obtained, and looked to the boats, through him, for the repayment thereof; that the steamboat company was organized on the 2d day of De-cember, 1893, with a capital stock of $50,000, but that no money was paid therefor by the stockholders; that the two steamboats, by agreement between himself and Thompson, were turned over to the company in payment of the entire stock, and constituted its sole assets; that certificates were issued to himself and wife for 799 shares, to Thompson for 200 shares, and Vance for one share; that it was understood and agreed by the stockholders at the time of the organization of the company that the indebted-ness which had been incurred by him to the bank should be assumed as an indebtedness of the steamboat com-pany, and be paid by it, as this indebtedness was, in the

454 KENTUCKY REPORTS. [Vol. 108

Farmers' Bk. of Ky. v. Ohio River Line Steamboat Co. Same
v. Barret et als.

main, created to raise money with which to construct
the boats. Mr. Starling, the cashier of the bank, testi-
fies that the several notes which were consolidated into
the note for $23,100 were given by Perkins for the con-
struction and running expenses of his two boats, Jewell
and Royal, and that it was his understanding that these
two notes were bound for the payment of the money so
furnished; that the old notes were given up on the 4th
day of February, 1895, and the note for $23,100 executed
in lieu thereof, in accordance with this agreement; that
previous to this date Perkins had been trying to sell the
Royal in order to take up this note; that the note for
$23,100 included one for $1,200 borrowed on the 29th day
of December, 1893, and also an item of $2,700, which was
loaned direct to the steamboat company on the same date;
and that on the day this note was executed the steam-
boat company borrowed an additional sum of $4,900, and
executed mortgages to secure both notes, the mortgage
being signed by Perkins, as president, and Thompson, as
secretary, of the company, and the notes in the name of
the company, with Perkins and Thompson as securities;
that on the 12th day of July, 1895, insurance was taken
out on both boats, and the policies made payable to the
bank, it having furnished the money with which to pay the
premium. The interest of R. D. Vance in the company
was only a nominal one, as he only held one share of stock,
which was given to him for his services in writing out the
articles of incorporation, and he himself testifies that he
abandoned all claim to this share soon after the organi-
zation of the company.

It seems to us, from the testimony, the attendant facts
which surrounded the organization of the steamboat com-

pany, and the transfer to it of the boats without any money being paid therefor, it is impossible to escape the conclusion that it was a part of the scheme that the new organization should assume the payment of the outstanding liabilities of Perkins to the bank, which had, in the main, been created to construct these very boats.   Perkins at that time had very little estate, outside of his interest in the boats and the business in which they were engaged. Both were clearly liable to the bank for the amount of its claims against him, and they were practically the only security it had for the large sums of money which had been advanced to Perkins; and it had the right to demand that this security should be preserved in the transfer to the new company, which had no money, and paid nothing for the boats.

The execution of the notes and mortgage by Thompson furnishes very satisfactory evidence that his understanding of the conditions on which the company acquired this property from Perkins was identical with that testified to by Perkins and Starling; and the first question to be determined, therefore, is, did the steamboat company have the right to acquire the interest of Perkins in the boats, subject to the condition that it should assume payment of certain definite and specific indebtedness due and owing by him at the time to the bank, and could it execute the mortgage on the boats to secure the payment of such indebtedness?

The common-law powers of private trading corporations of this character are ordinarily the same as those possessed by individuals, and may be employed in the same manner, and, unless restricted by their charters or some positive or clearly implied prohibition of law,

have the power to mortgage their property to secure the payment of borrowed money or debts necessarily contracted in the course of their business to enable them to carry on the purposes of the corporation.

The assumption by the steamboat company of the indebtedness of Perkins, who owned three-fourths of its capital stock, to the bank, was in effect a borrowing of that much money from the bank to enable it to consummate the purpose of its creation, which was to acquire and operate the boats in question. And the fact that the bank continued to furnish the new organization the necessary funds to enable it to discharge its outstanding obligations to others and to pay its operating expenses is certainly very strong evidence of the existence of the alleged agreement. We think the assumption of this indebtedness was within the powers of the new corporation, especially when it was done with the knowledge and approval of all of its stockholders

It is a well-recognized rule in courts of equity that the doctrine of *ultra vires* should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong, and certainly it should not be invoked in a case of this sort to defeat the effect of an agreement which is clearly within the scope of the powers of a corporation of this character. It therefore follows that the notes executed to the bank by the steamboat company, and the mortgage made to secure them, are valid and enforceable obligations in the hands of the bank, and should have been so adjudged.

The judgment is also erroneous on another ground. Appellees are not creditors of the corporation. They only stand, with respect to it, in the attitude of stockholders;

and as such they were privies to the litigation in which the bank obtained a judgment for the balance due on their debt against the steamboat company, which is binding upon them until reversed, modified, or set aside in a direct action instituted for that purpose. See Freem. Judgm. sec. 177; Black. Judgm., sec. 583; Van Fleet, Former Adj., p. 995; Thomp. Corp., secs. 3392, 3393; Beach, Priv. Corp., sec. 726; Mor. Priv. Corp., 865; Herm. Estop., p. 164.

A number of other errors are suggested, but, in view of the conclusions which we have reached on the points discussed, it will be unnecessary to consider them. For the reasons indicated, the judgment is reversed, with instructions to the lower court to enter a judgment dismissing the petition.