**FARRELL v. DRUMM FLORAL CO., Inc.**
No. 13788.

Court of Civil Appeals of Texas.
Fort Worth.
Feb. 10, 1939.

Rehearing Denied March 10, 1939.

Levy & Evans and Stewart W. Hellman, all of Fort Worth, for appellant.

Walker, Smith & Shannon, of Fort Worth, for appellee.

BROWN, Justice.

An old floral company named Drumm Seed & Floral Company became insolvent and went into the hands of a Receiver, and three individuals named E. S. Eastwood, F. H. Scott and C. J. Kincaid conceived the idea of purchasing the assets of such insolvent company and organizing a new corporation to go into the floral business. They contacted appellant John E. Farrell and induced him to lend them $8000 with which to purchase such assets and to go into business. The loan was made, a note was executed by the individuals, and they made a written contract with Farrell in which they agreed to put up all of the capital stock of the corporation as collateral for the loan, to pay to Farrell such sums as they were able to collect from the old company's accounts receivable, to be applied on the note, and the contract further provides: "We further agree that any and all nursery stock or other items that we do not personally carry which would come under our head of purchasing which you might desire, will state that we will gladly purchase same for you and deliver same to you at our cost.

"We further agree that any and all nursery stock that you may desire from our stock, we will bill you at wholesale price for same."

The individuals having incorporated the new enterprise under the name of Eastwood Scott Kincaid Floral Company, the company began to furnish appellant Farrell trees, shrubs and flowers for his new home as well as cut flowers on his orders.

The corporation was formed June 18, 1931 and continued to do business from that date until it was thrown into the hands of a receiver on or about June 15, 1932.

Early in March, 1932, the corporation was in some need of funds to carry on its business and sought a loan of $1500 from appellant Farrell, and the following proceedings were had: All of the stockholders transferred all of the assets and their stock in the corporation to Henry Zweifel, as Trustee, and all of the directors (being all of the stockholders) resigned as such, whereupon Zweifel transferred one share of capital stock each to E. S. Eastwood and Ellouise McStay, and on April 25, 1932, the said Zweifel, Eastwood and McStay were elected directors of the corporation, and a special meeting of the directors was called for April 30, 1932. At such meeting the following resolution was passed:

"Minutes of a Special Meeting of the Board of Directors of Eastwood-Scott-Kincaid Floral Company Held at the Office of the Company 707 Throckmorton Street, Fort Worth, Texas, on April 30th, 1932, at Ten A. M. O'Clock

"The following directors, being all of the directors of said company, were present:

"Henry Zweifel,
"E. S. Eastwood,
"Ellouise McStay.

"The meeting was called to order by the President.

"Mr. Eastwood explained to the directors the status of a note for the sum of $8,000.00 executed June 3, 1931, by F. H. Scott, E. S. Eastwood and C. J. Kincaid, payable to the order of J. E. Farrell six months after date, which note was given for money used for the purchase of the property and assets of Drumm Seed & Floral Company, which became the property and assets of this corporation, and upon motion duly made, seconded and carried, the following resolution was unanimously adopted.

"Whereas, under date of June 3, 1931, F. H. Scott, E. S. Eastwood and C. J. Kincaid executed their promissory note for the sum of $8,000.00 payable to the order of J. E. Farrell six months after date, with interest after maturity at the rate of eight per cent per annum, and secured from the said J. E. Farrell the sum of $8,000.00 which was used for the purchase of all the property, assets, accounts and business of Drumm Seed & Floral Company, it being agreed by and between the signers of said note and the said J. E. Farrell that the said J. E. Farrell should have a lien upon all of the property and assets of said Drumm Seed & Floral Company so to be purchased and upon all of the property and assets of Eastwood-Scott-Kincaid

Floral Company, a corporation thereafter organized by the signers of said note to secure the payment of said note; and

"Whereas, on the 26th day of June, 1931, the said E. S. Eastwood, C. J. Kincaid and I. E. Scott organized the Eastwood-Scott-Kincaid Floral Company and transferred and assigned to this corporation all of the property and assets of said Drumm Seed & Floral Company which had been purchased by them with said sum of $8,000.00 borrowed from the said J. E. Farrell, and said incorporators assigned and delivered all of the capital stock of this corporation to the said J. E. Farrell as collateral security for said note; and

"Whereas, this corporation has heretofore paid to the said J. E. Farrell the sum of $463.56 to be applied upon said note; and

"Whereas, said I. E. Scott and F. H. Scott transferred and delivered all of their right, title and interest in and to the capital stock and the property of this corporation to R. A. Stuart, and the said R. A. Stuart became an officer and director of this corporation, and as such officer and director said R. A. Stuart negotiated a loan for this corporation from the First National Bank of Fort Worth, Texas, of the sum of $1,500.00, the notes for which were endorsed by the said R. A. Stuart personally; and

"Whereas, on March 8, 1932, R. A. Stuart, E. S. Eastwood and C. J. Kincaid, the then owners of all of the capital stock of this corporation transferred and delivered all of their right, title and interest in and to said capital stock and the property of this corporation to Henry Zweifel, Trustee, in consideration of being relieved of all personal liability under said note for the sum of $8,000.00 and said notes for the sum of $1,500.00, and for the purpose of inducing said J. E. Farrell to advance to this corporation the sum of $1,500.00 to enable this corporation to continue its business, and at the same time said R. A. Stuart, E. S. Eastwood and C. J. Kincaid tendered their resignations as officers and directors of this corporation; and

"Whereas, on or about April 22, 1932, this corporation being without funds or credit, and it being necessary for it to secure funds for the purpose of carrying on its business, the said J. E. Farrell agreed to make an additional advance of $500.00 to the corporation with which to pay for the Masonic Temple shrubbery and the said Henry Zweifel, Trustee, agreed to repay the said J. E. Farrell out of the proceeds from what is known as the Masonic Temple contract the said additional advance of $500.00 which proposition was accepted by all persons interested in this corporation; and

"Whereas, on April 25, 1932, the said Henry Zweifel, Trustee, assigned and delivered one share of the capital stock of this corporation to E. S. Eastwood and one share of the capital stock of this corporation to Ellouise McStay, and at a special meeting of the stockholders of this corporation duly held on April 25, 1932, the resignations of the directors of this corporation were accepted, and the said Henry Zweifel, E. S. Eastwood and Ellouise McStay were duly elected directors of this corporation and they are now the duly qualified directors thereof; and

"Whereas, the amount of principal and interest now due and owing upon the said note for the sum of $8,000.00 is $7,803.10; and

"Whereas, the sum of $3,320.18 is now charged upon the books of this corporation to the said J. E. Farrell for and on account of merchandise sold and delivered to the said J. E. Farrell; and

"Whereas, it has been agreed by and between said J. E. Farrell and said Henry Zweifel that said note for the sum of $8,000 be credited with the amount of the charges on the books of this corporation against said J. E. Farrell and that Henry Zweifel transfer and deliver to said J. E. Farrell shares of the capital stock of this corporation of the par value of the balance due upon said note for the sum of $8,000.00 in consideration of the cancellation of said note and, further, that said J. E. Farrell be credited upon the books of this corporation with the sum of $1,500.00 heretofore advanced by him; and

"Whereas, said Henry Zweifel, Trustee, has authorized and directed this corporation to issue and deliver to J. E. Farrell certificates for 4,484 shares of the capital stock of this corporation and to issue and deliver to Henry Zweifel, Trustee, certificates for the remaining shares of said capital stock; Now,

"Resolved, that the charges upon the books of this corporation in the sum of $3,320.18 against J. E. Farrell be cancelled and annulled in consideration of the sum of $3,320.18 being credited by the said J. E. Farrell upon the promissory note for the sum of $8,000.00 dated June 3, 1931, exe-

cuted by F. H. Scott, E. S. Eastwood and C. J. Kincaid, payable to the order of J. E. Farrell six months after date, and that said J. E. Farrell be credited upon the books of this corporation with the sum of $1,500.00 heretofore advanced by him, and be it further

"Resolved, that the officers of this corporation be and they are hereby authorized and directed to issue and deliver to J. E. Farrell a certificate or certificates for 4,-484 shares of the capital stock of this corporation and to issue and deliver to Henry Zweifel, Trustee, a certificate or certificates for the remaining shares of said capital stock in accordance with instructions of said Henry Zweifel, Trustee, upon cancellation and delivery to said officers of said note for the sum of $8,000.00.

"There being no further business to come before the meeting, the same was, upon motion duly made, seconded and carried, adjourned.

"(Signed)    Ellouise McStay, Secretary."

Suit having been brought against the corporation by a creditor, it was thrown into the hands of a receiver about June 15, 1932, and such receiver, having made a report to the trial court, was ordered and authorized to sell all of the assets of the corporation at a private sale, and on August 12, 1932, said receiver by written instrument assigned certain items designated as assets to one John M. Welch. The portion of the assignment in which we are interested reads: "All accounts receivable, including both the accounts of Eastwood-Scott-Kincaid Floral Company, and the accounts of Drumm Seed & Floral Company; the Masonic Temple contract; the J. E. Farrell claim; as well as the claim against Joe Bacelich for rent, and whatever lien securing the same which the company may have; together with any and all other assets, including choses in action which the Eastwood-Scott-Kincaid Floral Company may now have, save and except the nursery stock located upon the said three tracts of land known as the Pollock, Bryce and Zweifel tracts."

The cash consideration for this assignment was $2,900 paid.

Thereafter, on August 16, 1932, Welch sold and assigned to a new corporation known as Drumm Floral Company, Inc., "all of the assets of Eastwood-Scott-Kincaid Floral Company, heretofore conveyed to me by Van Zandt Smith, Receiver of said company, by bill of sale dated August 12, 1932," and in describing the assets this instrument uses the identical language used in the assignment made to Welch.

Drumm Floral Company brought this suit against appellant Farrell seeking first, to recover the reasonable market value of all plants, shrubs, trees and flowers furnished Farrell, and judgment for the sums paid Farrell from the collections made on the accounts owing to the old Drumm Seed & Floral Company; the pleading then attacks the contract and all of the actions and undertakings stated by us above relative to the $8000 loan made by Farrell, the note executed by the three individuals, the contract to furnish Farrell the trees, shrubs, flowers, etc., on the basis shown, as being without authority in law to bind the corporation, and urges that Farrell became obligated and bound to pay for all such personal property the reasonable market value thereof; and in the alternative the plaintiff seeks to recover from Farrell for "drayage, truck expense, hoists and paraphernalia" in supplying Farrell with trees and shrubs furnished him, the sum of $351.75; and seeks to recover for "labor incident to the transporting of such trees and shrubbery and other nursery stock * * * an additional sum of $797.02;" and having alleged that the corporation was devoting a greater portion of its time to furnishing Farrell with the goods ordered by him, plaintiff seeks to recover from Farrell $2,799.10, which sum is alleged to be "properly allocable" to the services performed by Farrell as his part of the "overhead" expenses of the corporation, and the plaintiff alleges that if Farrell did not expressly agree to pay for such items he impliedly agreed to do so.

Appellant Farrell answered, in substance, that all of his indebtedness due the old corporation, Eastwood-Scott-Kincaid Floral Company, had been paid and he had been released from such obligation (in the manner shown hereinabove); that while the said corporation was a going concern and long before it was placed in the hands of a receiver, such corporation had made its charges against him on its books for all of the goods and services rendered him in the sum of $3,320.18, all of which sum was cancelled and extinguished by and through the acts of its stockholders and directors (as shown above), and that at the time the corporation was placed in the hands of a receiver it did not have on its books any account owing to it by Farrell and did not

then claim that Farrell owed it anything, and that in truth and in fact Farrell owed it nothing.

Farrell further pleaded that while the said corporation was a going concern it induced him to make it two other loans in the sums of $1,500 and $500 respectively, and in consideration of such loans the corporation expressly assumed the $8,000 indebtedness owing to him by the incorporators, and that all of the indebtedness owing by him to the corporation was agreed to be and was credited on such note.

He further pleaded that he had acted upon the representations and acts of the said corporation and did not press his claim and note, which he would have done but for the acts and representations of the corporation; that his debt is now barred by limitations, and that both the corporation and the plaintiff are estopped to claim that he is now indebted to the corporation, or its assignee.

Plaintiff replied insisting that the attempt on the part of the corporation to bind itself on the $8000 note and to pay any part of same was wholly without consideration and void.

The cause was tried to the court, and the following findings and conclusions were made: After finding with reference to the existence of and the receivership proceedings concerning the old Drumm Seed & Floral Company, and the facts concerning the loan of $8000 made by Farrell to Eastwood, Scott and Kincaid, for the purposes stated, the written agreement with Farrell and the $8,000 note, the purchase of the assets of Drumm Seed & Floral Co., the incorporation of the new company by the makers of the note, the court found, in substance, that Farrell knew that the money loaned by him would be used to buy the assets of the old corporation and to fully pay for the capital stock of the new corporation, which stock was to be pledged to him as security for the loan he made; that Farrell owned an estate in Westover Hills which he desired to beautify; that "The primary consideration moving Farrell to lend the money to the three individuals was to enable him to purchase from the corporation to be thereafter · organized nursery stock at cost to the corporation." The court further finds:

"10. (a) The reasonable market value of the merchandise furnished by the corporation to defendant, Farrell, was $6,277.10.

"(b) The cost to the corporation of the merchandise furnished and work done by the corporation for defendant, Farrell, was the sum of $6,675.82, made up of the following items:

Out of pocket costs in the way of actual money spent or wholesale price of nursery stock furnished to defendant Farrell... $1,755.70

Drayage expense (actual cost to corporation) .................. 351.75

Labor incident to moving trees, etc. (actual cost to corporation) 979.02

Overhead allocable to Farrell job (actual cost to corporation)... 2,799.10

Cut Flowers (actual cost to corporation) .................... 672.25

Total ..................... $6,675.82

"11. Defendant Farrell loaned to the corporation a total of $2,000 as follows: $1,500 on March 8, 1932, and $500 on April 22, 1932.

"12. $80.60 of the cost to the corporation as set out in Finding 10, subdivision (b) above, was more than two years old at the time of the institution of this suit.

"13. On March 8, 1932, all of the stockholders transferred and delivered all of their right, title, and interest in and to the capital stock of the corporation to Henry Zweifel, Trustee, in consideration of defendant Farrell's releasing the three individuals from personal liability upon the note of $8,000 as set forth in Finding 3 above; and Zweifel, as Trustee for Farrell, on April 30, 1932, called a special meeting of the Board of Directors of such corporation, having theretofore assigned from himself as Trustee to Eliose McStay and E. S. Eastwood qualifying shares in said corporation, at which a resolution was passed in which it was resolved that the charges upon the books of the corporation shown to be $3,320.18 against J. E. Farrell be canceled and annulled, in consideration of that amount being credited by the said J. E. Farrell upon the promissory note for the sum of $8,000 executed by the three individuals and set out in full under Finding 3 above. An entry carrying out this resolution was made on the books of the Corporation.

"14. Eastwood-Scott-Kincaid Floral Company, Inc., was insolvent within two months from the date of the filing of its charter, and continued so the remainder of its existence."

The court then finds that the receiver was ordered and authorized to sell the assets of the corporation and sets forth the order of the court in re the sale and approving same, and finds that Drumm Floral Company, Inc., is the owner by assignment of all rights acquired by the purchaser (John M. Welch) from the receiver.

The court then finds:

"17. At the time of the directors meeting of April 30, 1932, referred to in Finding 13 above, the corporation had many creditors, and the resolution which sought to offset the obligation due by the defendant Farrell to the corporation, with the debt due by three individuals to Farrell, was enacted for the purpose of depriving such creditors of claim which the corporation owned against Farrell, and was enacted with intent to defraud creditors, and said transaction was wholly without any consideration to the corporation.

"18. It was the intent of the parties at the time of making the agreement with reference to furnishing nursery stock to Farrell, that Farrell should pay to the corporation such cost as the corporation sustained in connection therewith, whether for labor, material or otherwise."

The court then concludes:

"That defendant Farrell became liable to the corporation for the cost to the corporation of the nursery stock, labor and overhead, as found in Finding 10, subdivision (b), less cost of the goods furnished in June 1931, totaling $80.60.

"That as against the liability of defendant, Farrell, to the corporation, he is entitled to offset his loans made to the corporation of $2,000.

"That the corporation never assumed or became liable for the obligation owed to defendant, Farrell, by the three individuals; that any attempt by the directors of the corporation to assume this liability was wholly without consideration, and the directors, being adversely interested, were without authority to act for the corporation.

"That the attempted offsetting of April 30, 1932, being done for the purpose of defrauding creditors, was void.

"That upon the appointment of a receiver for the corporation, said receiver had a cause of action against Farrell for the cost of said merchandise, being the sum of $6,-675.82, less loans made by Farrell to the corporation in the sum of $2,000, and less $80.60 barred by limitation, a balance of $4,595.22, with interest thereon at 6% per annum from and after January 1, 1933, to the date of judgment, or a total of $5,910.-77.

"That the plaintiff in this case has acquired by assignment the cause of action of the Receiver, with all incidental rights, and is entitled to prosecute this action."

The court rendered judgment for appellee against appellant in the sum of $5,910.-77, with interest at six per cent. from and after the date of the judgment.

From the judgment Farrell has appealed, after excepting to the findings of fact, the conclusions of law and the judgment predicated thereupon.

■ Let it be noted in the beginning of the discussion of the case that the appellee was never at anytime a creditor of the defunct corporation.

Boiled down to its true essence, this is a suit by the defunct corporation against one who was its debtor and its creditor. Taking the position of appellee, we can only find that it is a suit by the corporation against one of its debtors.

The rights of no creditor are involved here, and any insistence that any of the transactions had by and between Farrell and the promoters of the corporation, the stockholders and directors of the corporation, and the corporation itself, were or are either void or voidable as against the rights of the creditors or any creditor cannot be well taken.

■ The plaintiff below does not occupy the position of a receiver of a defunct or insolvent corporation. A receiver is vested with certain rights and powers because he is an arm of the court and is administering the estate for the benefit of all of the creditors of the concern.

■ The receiver has discharged his duties and under the orders of the trial court, in which the receivership was pending, he has sold such assets as he had for cash.

Whatever was assigned to Welch by the receiver was undoubtedly just what Farrell owed the corporation, when it was placed in the hands of the receiver—if anything. If Farrell was not then indebted to the corporation, Welch acquired nothing of value by his assignment and his assignee—the appellee—obtained only what Welch acquired.

It is not necessary for us to speculate upon what the status of the matters might have been had the receiver been instructed to bring suit against Farrell and had he sought to go back of, or undo, what was done prior to the receivership, in an endeavor to recover for the use and benefit of all the creditors of the corporation. That is not before us. The receiver and the trial court from which he received his authority undertook no such action.

The Supreme Court of Minnesota in the case of Minnesota Thresher Mfg. Co. v. Langdon, 44 Minn. 37, 46 N.W. 310, 313, had before it a case in which a creditor of an insolvent corporation had purchased from the receiver all of the assets of such corporation and instituted suit to recover dividends alleged to have been wrongfully and unlawfully paid to its stockholders, when it was insolvent, alleging that such act was in fraud of the rights of the creditors.

The court held that the corporation could not, in its own right, have maintained any such action and that the receiver could do so, "not in the right of the corporation, but only in the right of creditors."

In passing upon the question of whether any such right of action passed to the assignee of the corporation's assets the court said: "It may indeed admit of doubt whether any such a right of action is assignable, and whether a court has any power to order it to be sold. It is, in effect, a right of action to recover property transferred or disposed of in fraud of creditors. The sale of such a right of action by an assignee in bankruptcy, or a receiver of an insolvent, is, we apprehend, without precedent. The only standing of an assignee or receiver to recover property transferred in fraud of creditors is as trustee for the creditors; and, as he cannot sell his powers and duties as such trustee, it is somewhat difficult to see how he can transfer the right to attack such transfers." In support of such pronouncement the court cites a number of cases from Michigan, Wisconsin, Massachusetts and New York, and then proceeds: "But admitting, for the sake of argument, that such a cause of action is capable of being assigned; and that a court has the power to order its sale, to do so is so clearly against public policy, so fraught with the grossest abuses, and against the plainest dictates of common justice, that an order of sale should never be construed as authorizing such a thing unless such construction is compelled by the clearest and plainest language. Such a practice would result in the grossest injustice to creditors, and lead to the most unconscionable speculations by outsiders, who might buy for a mere trifle causes of action of the most indefinite and even unknown amount and nature, and then institute suits of the most speculative character."

After discussing the fact, that the nature and extent of such a claim, as was being asserted, was never set forth and disclosed so that the creditors might certainly know its nature and amount, and then discussing the probability of this assignee having brought suit against stockholders for unpaid stock subscriptions, the court said: "A more successful method of sacrificing the rights of creditors, and encouraging a most unjust system of speculation and vexatious litigation, could not well be devised. The order of sale referred to, even under the most limited construction, is certainly a very unusual and sweeping one; but what would be said of it if it should be construed as including in the expression, 'all the assets, property and business' of the insolvent, not only all property which belonged to the corporation as such, but also all those unnamed, and perhaps then undiscovered, causes of action which the receiver might have maintained, not in the right of the corporation, but solely in the right of creditors? The order ought not and cannot be construed, in any event, as authorizing the sale of anything except such assets as belonged to the corporation itself, and passed to the receiver in its right."

In full accord with the principles announced, we hold that the assignee of the receiver only acquired the right to recover from Farrell what, if anything, Farrell owed the corporation at the time it was placed in the hands of a receiver, and such assignee did not acquire any right to attack or set aside any transaction had and done by and between Farrell and such corporation and between Farrell and the stockholders and directors of the corporation, in the adjustment of the debts owing by the corporation to Farrell and those owing by Farrell to the corporation, and the assumption by the corporation of the debt owing to Farrell by the promoters of the corporation.

■ It affirmatively appears from the testimony of the bookkeeper of the corporation that when Farrell was induced to lend the corporation the additional sum of $2,000 and it was agreed that the corporation would assume the balance due on the $8,000 note, and that such note should be credited with the sum of $3,320.18 then owing by Farrell to the corporation, that such sum was the indebtedness · Farrell owed the corporation, as reflected by the books of the corporation and as the items were charged to him, and that his entire indebtedness, as reflected by the books and as charged to Farrell was only $3,789.19, and that Farrell had been credited with $3,341.04, leaving a balance due by Farrell of $458.15, but that the corporation had borrowed $2,000 from Farrell, none of which had ever been paid.

It appears to us that the account between the parties was stated and fixed. The corporation had fixed the amount owing by Farrell to it and Farrell had accepted the account as fixed.

This is neither a suit by the corporation to reform the account for fraud, accident or mutual mistake, nor is it a suit by the receiver to effect such purpose.

We hold that the assignee of the receiver cannot enlarge the account in this proceeding. That he cannot, in the face of the contract made, and in the face of the account as charged, fixed and stated, bring suit for the reasonable market value of the articles sold and delivered to Farrell, nor can the assignee bring suit for drayage expense, and labor incident to moving trees and shrubs, and for any sum alleged to be the "overhead" expenses incurred by the corporation while it was selling and delivering the articles to Farrell, as being a sum "properly allocable" to the Farrell job. None of these items were ever charged to Farrell by the corporation, and no such claim or claims against Farrell were ever asserted by the corporation or assigned by the receiver to Welch, and therefore were not assigned by Welch to appellee.

■ The parties to the contract having acted under it and having given their construction of it a very definite meaning by their acts and conduct, the matter is fixed and the assignee of the receiver cannot change the substance of the contract, as understood and acted upon by the parties before the receivership proceedings were begun.

10 Tex.Jur., p. 181, para. 105; Missouri K. & T. R. Co. v. Smith, 98 Tex. 47, 81 S. W. 22, 66 L.R.A. 741, 107 Am.St.Rep. 607, 4 Ann.Cas. 644; Henderson et al. v. Scott Oil & Refining Co. et al., Tex.Civ.App., 258 S.W. 1082; Galveston H. & S. A. Ry. Co. v. Johnson, 74 Tex. 256, 11 S.W. 1113.

It follows that the testimony concerning the reasonable market value of the articles furnished to Farrell, that concerning the value of labor done on the Farrell job, the value of drayage done on such job, and the amount of "overhead" incurred by the corporation, while dealing with Farrell, as being "allocable" to the Farrell job, was all inadmissible and could form no basis for a judgment against Farrell, and the findings by the trial court are wholly immaterial.

Our attention is called to the fact that in these findings, the trial court sets the sum for labor incident to moving trees at $979.02, whereas the pleadings only show and pray for $797.02, and such evidence as was introduced only tended to prove the sum of $797.02. This is admitted as error.

Taking the trial court's findings, as disclosed by paragraph 10 thereof, the total shown with the erroneous item is stated at $6,675.82, and on this basis the court has rendered his judgment.

These items, including the erroneous item, aggregate only $6,557.82, and when the error of $182 (being the difference between $979.02 and $797.02) is deducted, we find a balance of $6,375.82.

If the judgment of the trial court could have been properly bottomed on the items as pleaded, he could not have found the debt in a sum greater than $4,295.22. Thus is shown, on the face of the record, an error in calculation of $300, with six per cent interest on such sum from January 1, 1933, to the date of the judgment, and if the judgment could be sustained, it would of necessity have to be reformed, not being supported by the pleadings or the evidence.

It further follows that the finding made by the trial court that it was the intent of the parties at the time of making the agreement that Farrell should pay to the corporation "such cost as the corporation sustained in connection therewith, whether for labor, material or otherwise," is without support in the evidence, and was error.

The trial court erred in concluding that the corporation never assumed or became liable for the $8,000 note, and that any at-

tempt to assume such liability was wholly without consideration, and the directors were without authority to act for the corporation in assuming the debt.

■ That a corporation may adopt a contract and assume a debt made by its promoters and organizers prior to its incorporation is not an open question. 10 Tex.Jur., p. 602, para. 13; Pitman v. Chicago-Joplin Lead & Zinc Co. et al., 113 Mo.App. 513, 87 S.W. 10; Farmers' Bank of Ky. v. Ohio River Line Steamboat Co., 108 Ky. 447, 56 S.W. 719.

■ It is not even required that there be a new consideration to support the adoption and assumption of the preorganization contract. 10 Tex.Jur., p. 604; Hart-Toole Furniture Co. v. Shahan, Tex. Civ.App., 220 S.W. 181; Weathersby v. Texas & Ohio Lumber Co., 107 Tex. 474, 180 S.W. 735, 7 A.L.R. 1440; Weatherford M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 24 S.W. 795, 40 Am.St.Rep. 837.

■ We believe that in the case at bar a new, good and sufficient consideration passed to the corporation when Farrell loaned it additional sums of money with which to carry on. It was then that the formal step was taken, by all of the stockholders and all of the directors, assuming the balance of the debt on the $8,000 note, and crediting the note with the amount then charged against and owing by Farrell to the corporation.

It cannot be said that the contract made by the organizers with Farrell did not enure to the benefit of the corporation. But for the loan made by Farrell there would have been no corporation. His loan of $8,000 brought the corporation into being.

■ Farrell and the corporation could enter into the contract and agreement whereby the corporation assumed to pay the loan procured by its organizers from Farrell for the purpose of bringing the corporation into existence, and could settle his account with the corporation by the agreement to credit the debt he owed the corporation on the note due him and assumed by the corporation.

That the whole transaction resulted in a preference in favor of Farrell can make no difference, in the suit at bar.

■ Where, as in this case, all of the stockholders and all of the directors of the corporation acted and entered into the contract with Farrell, the state not having brought any action, no one except the corporation, the stockholders, or a creditor, who was such at the time the act was done, could attack the act of the corporation. The corporation and its stockholders could not level such attack. They did not do so, nor did they attempt to do so. They would have been estopped, under this record, to do so. The receiver did not attempt to attack the act and transaction. This assignee cannot now do so.

Arkansas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S.W. 627, 629; Gulf Pipe Line Co. v. Lasater, Tex.Civ.App., 193 S.W. 773, writ refused.

Thompson on Corporations, sec. 6030, declares: "In general it may be said that one whose rights are not injuriously affected by reason of the fact that a corporation is acting in excess of its powers or beyond the warrant of law has no standing in court to complain of same."

Appellee here was not affected in any way by the transactions which it seeks to now avoid. It had not even sprung from the womb of the State, when the acts complained of occurred. See also Eno v. Crooke, 10 N.Y. 60.

■ A corporation, even though insolvent, while yet a going concern, may prefer one of its creditors. Zorn v. Brooks et al., 125 Tex. 614, 83 S.W.2d 949, which cites a number of Texas authorities and is an exhaustive opinion, supports our views. See also Pitman v. Chicago-Joplin Lead & Zinc Co. et al., 113 Mo.App. 513, 87 S.W. 10.

■ Appellee is in no position to complain of the preference having been given. Its rights were never affected by the contract and agreement entered into.

From the record we find that, when the Eastwood-Scott-Kincaid Floral Company was placed in the hands of a receiver, appellant Farrell was not indebted to such concern but same was indebted to Farrell for monies loaned and advanced by him to it.

The findings of fact and conclusions of law are in many respects erroneous, and we will not prolong the opinion by a detailed discussion of them.

We conclude that the judgment of the trial court should be reversed and that judgment should be here rendered for appellant, and it is so ordered.