RELIGIOUS FILMS, Inc., v. POTTS et al.

No. 11821.

Court of Civil Appeals of Texas. Galveston.

Nov. 14, 1946.

Vinson, Elkins, Weems & Francis and Fred R. Switzer, all of Houston, for appellant.

R. C. Patterson, of Houston, for appellee Potts.

MONTEITH, Chief Justice.

This action was brought by Peter T. Potts, the duly appointed guardian of Katie R. Potts, a person of unsound mind, for the recovery from appellant, Religious Films, Inc., and others, of the amount alleged to be due on a note for the sum of $9009.33, which had been executed by Religious Films, Inc., and W. H. S. Foster, and made payable to Katie R. Potts under the terms of a contract of even date with said note, and for foreclosure of an alleged lien on certain stock of Religious Films, Inc.

Judgment was rendered in favor of appellee and against Religious Films, Inc., and W. H. S. Foster, upon said note for the sum of $14,715.07, which included interest and attorney's fees, upon findings of a jury. Appellant, Religious Films, Inc., has appealed from this judgment.

Appellant's main contention on appeal is that the court erred in overruling its motions for an instructed verdict and for judgment non obstante veredicto, and in entering judgment against it for any sum on the note, for the alleged reason that said note neither purported to create, nor did it create, an indebtedness of the corporation which was for "money paid" to, or for "labor done for it", or for "property actually received by it", and that, therefore, it was ultra vires and was prohibited under the terms and provisions of Article 1348 of the Revised Statutes and was void.

It is undisputed in the record that W. H. S. Foster wrote the scenario of a religious film called "The Perpetual Sacrifice," and in 1938 Katie R. Potts, under the terms of a contract dated June 18, 1938, agreed in consideration of the assignment to her of a one twelve and a half interest in said picture, to advance to him the sum of $8000 to be used for the filming of said picture, and that, under the terms of this agreement, W. H. S. Foster executed and delivered to her his note for the sum of $8000 dated July 1, 1938. Foster agreed with Katie R. Potts that all receipts from the showing of the picture, except the actual operating expenses thereof, should be paid over to Katie R. Potts and Cecil R. Haden, who had also advanced money for its production, until all of said money had been fully repaid.

Religious Films, Inc., was incorporated on December 20, 1938, the recited purpose of the incorporation being "to transact business of manufacturing motion pictures and to purchase and sell goods, wares, and merchandise used for such business," as provided for in Subdivision 34, Article 1302 of the Revised Statutes of the laws of the State of Texas.

The entire capital stock of the corporation was represented by the film "The Perpetual Sacrifice," which was assigned to Religious Films, Inc., at the time of its incorporation at a valuation of $25,000, divided into 2500 shares of $10 each, 1225 shares of which were issued to both W. H. S. Foster and Cecil R. Haden. Fifty shares of stock were issued to Virginia Foster, daughter of W. H. S. Foster. No shares were issued to Katie R. Potts.

In 1940 Katie R. Potts retained an attorney, Theo F. Weiss, to represent her in the collection of said note and at a meeting attended by Cecil R. Haden, W. H. S. Foster and Katie R. Potts in Theo F. Weiss' office in San Antonio, the terms of the contract dated August 8, 1940, which was later prepared and executed, were agreed upon by all parties, and in accordance therewith the corporation executed its note, payable to Katie R. Potts, in the sum of $9009.33, secured by an undivided one-half interest in the motion picture, "The Perpetual Sacrifice." The agreement provided a pledge of certain stock of the corporation to secure the payment of the $9009.33 note involved herein, which was executed in renewal and extension of the original $8000 indebtedness. It provided that one-half of the net earnings of the picture, "The Perpetual Sacrifice," should be assigned to her and that in consideration therefor she would release and relinquish all interest or claim asserted by her against said picture.

At a meeting at which all directors of the corporation were present, and pursuant to notice and call therefor in the manner prescribed by the corporation's by-laws, this agreement was embodied in a resolution unanimously adopted by its directors.

Article 1348, Revised Statutes of 1925, relied on by appellant, provides that:

"No corporation, domestic or foreign, doing business in this State shall create any indebtedness whatever except for money paid, labor done which is reasonably worth at least the sum at which it was taken by the corporation, or property actually received reasonably worth at least the sum at which it was taken by the corporation."

The courts of this state have uniformly held an act of a corporation to be ultra vires when it is beyond the scope of either the express or implied powers of its charter. The test generally applied is that if the act is not one prohibited by law or by public policy, and it inures to the direct benefit of the corporation and is executed, it is not, strictly speaking, ultra vires.

It is also well settled that neither a corporation nor an individual can accept services or property under an ultra vires contract, receive all its benefits, and then refuse to pay therefor. Southwest Gas Co. v. Doney, Tex.Civ.App., 99 S.W.2d 1107; Edwards v. Keller, Tex.Civ.App., 133 S.W. 2d 823.

In 10 Tex.Jur., 1018, Sec. 353, it is said that:

"Where a corporation is organized to take over the assets and liabilities of another concern, whether conducted by individuals or a corporation, the new organization is directly liable to creditors of the former business, it being the rule in Texas that where one person for valuable consideration agrees to pay to a third person a sum due him from another, the latter may recover directly from the debtor.

"In the absence of an express undertaking to pay the debt of a predecessor, there is a presumption that it was intended that a corporation organized to take over all assets of its predecessor should assume its liabilities also."

In the recent case of English Freight Lines v. Knox, 180 S.W.2d 633 (writ of error refused), under an almost parallel state of facts, the court in its opinion cited with approval the above quotation from Texas Jurisprudence and the rule stated in 18 C.J.S., Corporations, § 121, which reads:

"Where an individual or sole trader organizes a corporation to take over his business and all his assets, and it becomes in effect merely the alter ego of the incorporator, the corporation, either on the grounds of implied assumption of the debts or on the grounds that the business is the same and is merely being conducted under a new guise, is liable for the incorporator's preëxisting debts and liabilities."

In this case the $8000 originally advanced by appellee, Katie R. Potts, to W. H. S. Foster was for the express purpose of completing the picture, "The Perpetual Sacrifice," and the note sued on herein for $9009.33 was a renewal and extension thereof. It is undisputed that after the incorporation of Religious Films, Inc., the directors thereof, at a duly called meeting and by resolution of all its directors, expressly assumed the payment of said note as the acts of such corporation.

It is also a well settled rule that a grant of express power to a corporation carries with it by necessary implication the grant of every other power necessary and proper to the execution of the power expressly granted. City of Beaumont v. Calder Place Corporation, Tex.Civ.App., 180 S.W.2d 189; Stephens County v. J. N. McCammon, Inc., 122 Tex. 148, 52 S.W. 2d 53.

It is undisputed in this case that said note and appellee's claim for stock in appellant corporation had been placed in the hands of an attorney for collection, and that the contract and note dated August 8, 1940, were executed by the duly authorized officers of the corporation for the purpose of effecting a compromise and settlement of appellee's claim against the corporation.

In the case of Farrell v. Drumm Floral Co., Inc., Tex.Civ.App., 125 S.W.2d 606, writ of error dismissed, correct judgment,

which involved collection of a debt which accrued prior to the incorporation of the Drumm Floral Company and which was assumed by the corporation, it was held that a corporation may adopt a contract and assume a debt made by its promoters and organizers prior to its incorporation and that it is not even required that there be a new consideration for the assumption of the pre-organization contract.

In the case of Southwest Gas Co. v. Doney, Tex.Civ.App., 99 S.W.2d 1107, 1112, this court, speaking through Justice Graves, in a suit which grew out of the promotion and organization of Southwest Gas Company to take over certain gas franchises, properties and rights held under a contract between two of the incorporators which constituted the basis of an escrow agreement, in its opinion held that:

"The case is different where property has been delivered to the promoter, and ownership of it assumed by the corporation. Such acceptance of the property necessarily involves the obligation of paying for it. Thus the corporation, by receiving and holding the property, is estopped from denying the validity of mortgages executed over the property prior to incorporation."

The cases of Stephenson et al. v. Callihan et al., Tex.Civ.App., 60 S.W.2d 805; Morrison v. Sewell, Tex.Civ.App., 4 S.W.2d 1029; Cattle Raisers Loan Co. v. Sutton, Tex.Civ.App., 271 S.W. 233; Modern Dairy & Creamery Co. v. Blanke & Hauk Supply Co., Tex.Civ.App., 118 S.W. 153, are in accord with the above announced rule.

In 10 Texas Jurisprudence, Sec. 14, it is said:

"Notice to the promoters of a corporation, as such, is not usually binding on the corporation when formed; but a corporation to which has been conveyed the property of persons associating themselves to form the corporation, and conveying their property to it, is charged with notice of any encumbrance within the knowledge of the associates."

In the instant case, it is undisputed that W. H. S. Foster borrowed $8000 from Katie R. Potts. He gave his note to her for that amount and executed a contract wherein it was expressly stated and provided that the $8000 received constituted a lien, and that it was to be used for the filming of the sound picture, "The Perpetual Sacrifice." It was stated that in consideration of the sum advanced by appellee, Foster assigned to her an interest in the above named picture and agreed therein that all receipts of the picture, less the actual operating costs, should be paid over to the parties· advancing the money. The record shows that later Foster, his daughter, Virginia Foster, and Cecil R. Haden, as incorporators, procured a charter for Religious Films, Inc., for the purpose of completing and marketing said picture, the purpose for which appellee had advanced the sum of $8000 to W. H. S. Foster, one of the incorporators thereof who subsequently became president of the corporation; and that when Foster assigned and transferred the motion picture to Religious Films, Inc., the capital stock thereof was issued to Foster, his daughter, Virginia Foster, and Cecil R. Hayden. At the time of the incorporation of Religious Films, Inc., appellee had a lien thereon which had been assigned to her in the payment of said note.

Under these facts, we think Religious Films, Inc., became liable for the funds advanced to Foster by appellee and that the note for $9009.33, which was given in compromise and settlement of an obligation which the corporation had assumed, was within its implied and incidental powers.

We have carefully considered all other points of appeal presented by appellant in its brief. Finding no reversible error therein, the judgment of the trial court is in all things affirmed.

Affirmed.